# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SYNERON MEDICAL LTD. | § |
| | § |
| *Plaintiff*, | § |
| v. | § |
| | § CIVIL ACTION NO. 2:14-cv-00639 |
| VIORA LTD., VIORA INC., and COPPER | § |
| LEAF DAY SPA & SALON | § JURY TRIAL DEMANDED |
| | § |
| *Defendants*. | § |

## MEMORANDUM OPINION AND ORDER

Before the Court are two related motions, Defendants Viora Ltd., Viora Inc., and Copper Leaf Day Spa & Salon's (collectively, "Viora") Motion for Sanctions under Rule 11 against Plaintiff (Dkt. No. 25) and the Plaintiff Syneron Medical Ltd.'s ("Syneron") Motion for Sanctions under Rule 11 against Defendants (Dkt. No. 42). For the reasons set forth below, both motions are **DENIED**.

### I.  Background

This dispute concerns two competitors' disagreement over claim terms contained in U.S. Patent 6,662,054 (the '054 patent), issued December 9, 2003. The majority of the facts are largely undisputed.

The primary parties in this lawsuit are competitors headquartered in Israel. Dkt. No. 25 at 1–2. Both Syneron and Viora produce a skin treatment system that reduces fat cell volume, increases metabolism, increases blood circulation, and tightens the skin. *Id.* This treatment process is accomplished by the accused product in this lawsuit. *Id.* The accused product, The Viora Reaction System ("Reaction system"), is made by Viora and used by Copper Leaf Day Spa & Salon, the other defendant. *Id.* Syneron owns U.S. Patent No. 6,662,054 and produces its own

skin treatment system.

The disputed claim terms are present in Claim 1, a method claim, and Claim 8, a system claim of the '054 patent. Claim 1 discloses a method for carrying out a treatment of skin, comprising for each of one or more regions of the skin: (a) deforming the skin so that the region of skin protrudes from surrounding skin; (b) applying radio frequency (RF) energy to the skin; and (c) massaging the skin. Claim 8, a system claim, likewise has three corresponding elements that are very similar to the method claim.

The parties largely agree that the first two elements [(a) and (b)] of the method and system claims are present within and met by Viora's Reaction system. Dkt. No. 25 at 7. As a result, the gravamen of this dispute centers on whether the accused product meets element (c) by massaging the skin or containing a massager. Syneron instituted the present lawsuit to decide this question.

On May 22, 2014, Syneron filed its complaint against Defendants, all of which are represented by the same counsel. On July 28, 2014, Viora notified Syneron by letter that Viora intended to file a Motion for Sanctions under Rule 11, alleging that Syneron's complaint was so frivolous that it constituted sanctionable conduct. Dkt. No. 25 Ex. F. Viora contends that there is no legitimate question that the massaging element is absent from the accused product such that "bringing of a claim of infringement based on the Reaction system has absolutely no factual support and was brought either without any pre-filing investigation or with full knowledge that there is no basis for the infringement claims with the intent to injure Defendants' business." Dkt. No. 25 at 1.

As required by Rule 11, Viora gave Syneron twenty-one days to withdraw its complaint against Viora. Unwilling to do so, Syneron (on August 15, 2014) responded by letter to Viora's July 28, 2014 demand. In that letter, Syneron pointed Viora to legal support for Syneron's claim

construction positions. Dkt. No. 34 Ex. 3 at 2. Syneron also made it clear to Viora that should it proceed to file its Rule 11 Motion, that Syneron would itself view such conduct as a violation of Rule 11 since Syneron views Viora's motion as wholly frivolous. *Id.* That is to say, Syneron asserts that Viora's Motion for Sanctions is so frivolous that bringing the motion itself is sanctionable. Syneron allegedly requested that Viora waive the twenty-one day safe harbor period for filling a Rule 11 Motion so that the two sanctions motions could be briefed together. Dkt. No. 34 at 1 n.2. However, Viora refused to waive the safe harbor period. *Id.* Unable to resolve their differences, on September 2, 2014—roughly three months after the litigation commenced—Viora filed its Rule 11 Motion for Sanctions (Dkt. No. 25, Sanctions Motion #1). After waiting for the safe harbor period to pass, on October 6, 2014 Syneron filed its Rule 11 Motion for Sanctions (Dkt. No. 42, Sanctions Motion #2). Both motions are now before the Court.

Supporting these two motions, the parties have now filed over 1,700 pages of briefs, supporting declarations, and documents—on this single issue—which the Court has been required to review. The parties' ten (10) accompanying briefs contain arguments that are traditionally dealt with during summary judgment or claim construction briefing. Each side states that these supportive filings were tendered in an effort to show that Syneron's pre-filing investigation was either reasonable or unreasonable, as the case may be.

A hearing before the Court was held on December 4, 2014. At the hearing, it was revealed that Syneron and Viora are not strangers to each other. They have a long and complicated history that includes allegations of employee poaching, misappropriation of trade secrets, and intentional interference with business relationships. Those issues, however, are not before this Court. Instead, this Court is tasked solely with determining whether either or both parties' conduct is

sanctionable under Rule 11.

## II. Legal Standards

The Federal Rules of Civil Procedure are given their plain and ordinary meaning. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540 (1991). Rule 11 provides in relevant part: "By presenting to the court a . . . written motion or other paper, . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances* . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law . . . [and] the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b) (emphasis added). As articulated by the U.S. Supreme Court, "Rule 11 is aimed at curbing abuses of the judicial system." *Bus. Guides*, 498 U.S. at 542 (internal quotation marks omitted).

In the Fifth Circuit, when determining whether a party has violated Rule 11, "the standard under which an attorney is measured is an objective, not subjective standard of reasonableness under the circumstances." *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 581 (5th Cir. 2008). Consequently, while the motivations behind such a filing may well be interesting reading, they are wholly irrelevant. *Id.* at 580.

In the context of patent infringement actions, a reasonable inquiry under Rule 11 requires that an attorney (1) perform a nonfrivolous claim construction analysis and (2) apply it as part of a reasonable infringement analysis. *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1301–02 (Fed. Cir. 2004). Evidence of a nonfrivolous claim construction analysis consists of a claim interpretation that "comport[s] with the plain meaning of the claim language and do[es] not appear to be inconsistent with the patent's written description and prosecution history." *Id.* at 1301.

4

Given that "[r]easonable minds can differ as to claim construction positions and losing constructions can nevertheless be nonfrivolous," claim construction positions are analyzed on a spectrum of reasonableness. *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012). At one end of that spectrum, a threshold exists where a claim construction position is so unreasonable that "no reasonable litigant could believe it would succeed." *iLor, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011). Should a claim construction position meet this high threshold, the claim construction is frivolous, and Rule 11 mandates sanctions. *Id.*

With respect to a reasonable infringement analysis, an attorney need only show that "a good faith, informed comparison of the claims of a patent against the accused subject matter" took place. *Q-Pharma*, 360 F.3d at 1302. "[T]he presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11." *Id.*

### III. Analysis

From the outset, the Court is compelled to note that it is not construing the claims of the '054 patent in this Order. Instead, the Court's only inquiry is whether Syneron's proffered claim construction was so frivolous that no reasonable litigant would believe it could succeed and whether its pre-suit investigation that followed was unreasonable. *Q-Pharma*, 360 F.3d at 1301. The Court holds that it was not.

#### A. The Merits of Viora's Rule 11 Sanctions Motion

In *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir. 2004), the Defendant contended that the Plaintiff did not conduct a reasonable pre-suit investigation and that the Plaintiff's claim construction was frivolous. *Id.* at 1298–99. As factual support for the reasonableness of its overall pre-suit inquiry, the Plaintiff showed that while it did not conduct a

5

chemical analysis of Defendant's accused product before filing suit, its attorneys performed a claim construction analysis and did an independent infringement analysis based on Defendant's advertising statements. *Id.* at 1298. These advertising statements suggested that the accused product met the claim limitations. *Id.* The Federal Circuit concluded that the infringement analysis—which "plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11"—relied on Defendant's advertising statements and was reasonable. *Id.* at 1302. In deciding that the claim construction analysis was not frivolous, the Federal Circuit reasoned that "[c]laim interpretation is not always an exact science, and it is not unusual for parties to offer competing definitions of even the simplest claim language." *Id.* at 1301. The Federal Circuit further reasoned that Plaintiff's claim interpretation, while broad, followed the standard canons of claim construction and was reasonably supported by the intrinsic record. *Id.* As a result, the overall pre-suit inquiry was reasonable and therefore no Rule 11 sanctions resulted.

On the other hand, in *Raylon, LLC v. Complus Data Innovations, Inc.*, the Federal Circuit reversed a district court's order denying sanctions under Rule 11 because the Plaintiff's construction was so objectively unreasonable—so frivolous—that no reasonable litigant could believe it would succeed. 700 F.3d 1361, 1368 (Fed. Cir. 2012). In *Raylon*, the Plaintiff's construction was not supported by any intrinsic evidence and was against the plain and ordinary meaning of the claim term. *Id.* The claim term required a "display being pivotally mounted *on said housing*." *Id.* at 1369. The Plaintiff's construction of the claim term "pivotally mounted" would have the court believe that the user's elbow could act as the "pivot" to make an otherwise fixed display on the housing "pivotally mounted." *Id.* The only intrinsic evidence Plaintiff cited in support of its broad construction position—a sentence from the specification stating that the

6

purpose of the invention was that a user could maintain eye contact with a third-party while using the invention—lent no factual support to their argument. *Id.* Instead, the Plaintiff's position was directly contradicted by the plain and ordinary meaning of the claim language. *Id.* Reasoning that Plaintiff's "claim construction . . . is contrary to all the intrinsic evidence and does not conform to the standard canons of claim construction," the Federal Circuit directed the District Court to sanction the Plaintiff for putting forth a frivolous argument. *Id.* These sanctions were requested by Defendant and occurred after final judgment was entered. *Id.* at 1366.

In the present case, the disputed construction concerns the "massaging" element of claims 1 and 8 of the '054 patent. The Court first turns to the issue of whether Syneron's pre-suit construction of that term was nonfrivolous. Second, the Court identifies whether Syneron's pre-suit infringement analysis and application of its allegedly nonfrivolous construction to the facts was reasonable. While the Court refuses to finally construe the claims at this stage in the litigation, the Court properly uses the guiding principles of claim interpretation to determine what is frivolous and what is nonfrivolous.

### i. Syneron's Claim Construction

The Court starts by analyzing the reasonableness of Syneron's construction. The key question for the Court is whether Syneron's proposed claim construction conforms to the standard canons of claim construction and is reasonably supported by the intrinsic record. *Raylon*, 700 F.3d at 1369. In accordance with the guidance from *Q-Pharma* and *Raylon*, Syneron argues that the "massage" claim term should be given its plain and ordinary meaning. Dkt. No. 34 at 6. The counterargument offered by Viora is that giving the term "massage" its plain and ordinary meaning cuts against the intrinsic evidence. Dkt. No. 25 at 10. Viora argues that the "massager is described as an element separate and apart from the housing and the electrodes," *id.* at 1, and that

7

based on the intrinsic evidence, this separate structure is required to perform the massaging element of method claim 1. *Id.* at 10. Syneron, on the other hand, argues that this interpretation is wrong for two reasons. First, Viora's interpretation would require the Court to narrowly interpret the claims in a manner inconsistent with the '054 patent's disclosure based on unilateral examiner statements. Dkt. No. 34 at 10. Second, Viora's interpretation would require the Court to ignore case law suggesting that a single structure in an accused product cannot satisfy more than one claim element. *Id.*

While the Court is not charged with determining which party has the correct interpretation, the Court is charged with determining whether *plaintiff's* construction was nonfrivolous. The Court is not persuaded that Viora's arguments completely overcome the Plaintiff's suggested construction to the degree necessary to place Plaintiff's construction beyond the threshold of showing that "no reasonable litigant could believe it would succeed." *iLor, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011). Unlike *Raylon*, where the Plaintiff's construction contradicted the plain meaning of the claim terms and was wholly unsupported by the intrinsic evidence, Syneron's construction matches the plain meaning of the terms and is not unsupported by the intrinsic evidence. While Viora may have a valid claim construction *position*, it is just that—a position taken during the early stages of litigation. Syneron has put forth its counter position. At the *Markman* stage, the Court will resolve which of the two positions is correct—with such *Markman* hearing currently scheduled for March 2015. At the *Markman* stage, the Court will be aided by the parties' joint claim construction statement, a complete claim construction discovery record, an opening claim construction brief, technical tutorials, a responsive claim construction brief, a reply claim construction brief, and a joint claim construction chart. *See* Dkt. No. 32 (the Court's Docket Control Order). None of that, however, is now

8

before the Court. Given the above, the Court is persuaded that the Plaintiff's plain and ordinary meaning is not inconsistent with the intrinsic evidence and supports the nonfrivolous nature of its interpretation.

### ii. Syneron's Infringement Analysis

The Court next turns to whether Syneron's pre-suit infringement analysis was reasonable. The Court finds helpful a comparison between Syneron's investigation and infringement analysis and that of the Plaintiff's investigation and infringement analysis in *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir. 2004). In both instances, the Plaintiffs compared their non-frivolously construed claim to Defendant's publicly available documents. *Id.* at 1298; *e.g.*, Dkt. No. 34 at 4–5 & Ex. 1, Ex. 6. Both Plaintiffs also conducted an extensive written pre-suit infringement analysis (Dkt. No. 34 Ex. 1 & Ex. A), which the Federal Circuit has described as "play[ing] the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11." *Q-Pharma*, 360 F.3d at 1302. As examples, Syneron directed the Court to Viora's public documents stating that Viora's accused product had three distinct steps, the first two meeting the first two elements of the claim, and the third step being a "mechanical massage." Dkt. No. 34 Ex. 6. Given that the claim terms appear reasonably consistent with publicly available documents on an element-by-element basis, and given the 198 pages of infringement contentions filed with the Court (and served on Viora) by Syneron, the Court concludes that Syneron's pre-filing investigation and infringement analysis meets the standard of being a "good faith, informed comparison of the claims of a patent against the accused subject matter." *Q-Pharma*, 360 F.3d at 1302.

Based on the nonfrivolous nature of Syneron's claim construction and the infringement analysis, the Court holds that Plaintiff's overall pre-suit inquiry was reasonable and that Syneron's

conduct does not cross the Rule 11 sanctions threshold whereby "no reasonable litigant could believe it would succeed" on the merits. *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012); *iLor, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011). Accordingly, Viora's Motion for Sanctions under Rule 11 (Dkt. No. 25) is **DENIED**.

### B. The Merits of Syneron's Sanctions Motion

The law concerning Syneron's responsive sanctions motion is the same, as discussed above. Consequently, under the proffered standard, the Court believes that Viora has not violated Rule 11 either. Syneron's motion is not successful for the same reasons that Viora's motion is not successful. At this early stage in the litigation, the Court is not persuaded that one objectively reasonable claim construction position should prevail over another objectively reasonable claim construction position. The Court is not charged with determining which party's position is "more likely than not correct," but is only charged with determining whether a motion crosses the threshold of frivolousness such that no reasonable litigant could believe it would succeed. Although its original Rule 11 motion was perhaps ill-advised,[1] Viora could have succeeded had the Court adopted Viora's position. For this reason, the Court cannot find that Viora's motion was so frivolous that no reasonable litigant could believe it would succeed. Accordingly, Syneron's Rule 11 Motion for Sanctions (Dkt. No. 42) is **DENIED**.

Any relief further requested by either party in their respective motions is also **DENIED**.

### IV. Conclusion

The threshold for a Rule 11 Sanctions motion is high, as well it should be. Here, neither

---

1 The Court explored with counsel for Viora why it had not sought an early claim construction and MSJ as to the single dispute regarding the claim term "massaging the skin" rather than immediately seeking Rule 11 sanctions. Despite counsel's response, the Court views these alternatives as preferable to the sanctions motions filed. Sanctions motions, while a proper procedural vehicle, carry with them unavoidable allegations of professional misconduct by counsel, and if found, constitute a reportable event to admission committees, bar associations, and other professional organizations. They have inherently negative repercussions that often "poison the well" between competing counsel in a way that can needlessly harm the prospects for civility and professionalism between members of the bar.

party met their burden of showing that the other party crossed that high threshold. Instead, both parties find themselves left with heightened emotions and a tainted environment at a relatively early stage in the litigation process. The Court looks with disfavor on both parties' motion practice for these reasons, but especially on that of the Defendant who started what became a 10-brief, 1,700 page escapade. Furthermore, in nearly all the cases cited by both parties, the Rule 11 motions were brought *after* the Court made a determination on the merits of the case; not as a first option. The Court looks with particular skepticism on sanctions motions brought immediately after joining issue and well before *any* type of discovery has taken place. While perhaps unwise (for the reasons stated above) and often premature, it is not patently improper to bring a Rule 11 motion for sanctions at this very early point in the litigation. The Supreme Court has made clear that "Rule 11 is aimed at curbing abuses of the judicial system," *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540 (1991) (internal quotation marks omitted), and the Federal Circuit has suggested the same. However, under the guise of being an abused party, the Defendant ultimately abused the Court through the excessive filing of 10 briefs and 1,700 pages through which the Court had to wade, only to conclude that neither motion was well-founded. For this reason, and as a means of cautioning future litigants against ill-conceived decisions to immediately move for sanctions as a "first option," the Court uses its inherent authority to tax a portion of the costs of responding to and defending Viora's motion against the Defendants. It is ORDERED that Defendants jointly pay to Syneron its costs of defending against Viora's motion for sanctions up to but not more than $10,000.00. Such payment shall be made within seven (7) days hereof. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991).

**So ORDERED and SIGNED this 12th day of December, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE