**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| SYNERON MEDICAL LTD., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:14-CV-639 |
| | § | |
| VIORA LTD., VIORA INC., and COPPER | § | |
| LEAF DAY SPA & SALON | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

On March 31, 2015, the Court held a hearing to determine the proper construction of the disputed claim terms in United States Patent No. 6,662,054 ("the '054 Patent"). After considering the arguments made by the parties at the hearing and in the parties' claim construction briefing (Dkt. Nos. 78, 81, & 83), the Court issues this Claim Construction Memorandum and Order.

# TABLE OF CONTENTS

MEMORANDUM OPINION AND ORDER ................................................................................... 1

I. BACKGROUND ........................................................................................................... 3

II. APPLICABLE LAW ..................................................................................................... 4

    **A.**    **Claim Construction** ............................................................................................ 4

    ***B.***    ***Construction Indefiniteness*** ............................................................................. 6

III. CONSTRUCTION OF AGREED TERMS ..................................................................... 7

IV. CONSTRUCTION OF DISPUTED TERMS ................................................................... 7

    1.   "deforming the skin," "massaging the skin," and "massage the skin" ........... 7
    2.   "massager for massaging the skin" and "massager . . . configured to massage the skin" ............................................................................................................... 38
    3.   "associated with the housing" ....................................................................... 46
    4.   "processor" ..................................................................................................... 52
    5.   "region(s) of the skin" .................................................................................. 55

V. CONCLUSION ............................................................................................................ 58

## I.     BACKGROUND

The '054 Patent is titled "Method and System for Treating Skin."  It was filed March 26, 2002, and issued on December 9, 2003.  The '054 Patent generally relates to a method and system for deforming the skin, applying radio frequency (RF) energy to the skin, and massaging the skin.[1]  Specifically, the specification describes a device for applying negative pressure and RF energy to skin. '054 Patent at 2:19–20.  Figure 3 illustrates the applicator 701 and the region 108 of skin after partial evacuation of the interior 106 of the applicator. *Id.* at 2:55–57.



FIG. 3

The specification states that "[i]n this configuration of the skin, the subcutaneous adipose tissue 133 is brought closer to the RF electrodes 201 and 202." *Id.* at 2:60–61.  The specification further describes that "applicator 701 is connected to a control unit 704 via a cable 702," and that

---

[1] The Abstract of the '054 Patent follows:

> A method and system for treating skin. The method comprises deforming the skin so that a region of skin protrudes from surrounding skin, and applying radio frequency (RF) energy to the skin. The system comprises a skin deformer that deforms a region of skin so that a region of skin protrudes out from surrounding skin. The system also comprises one or more RF elemodes [sic] configured to apply RF energy to the skin. The invention may be used to treat subcutaneous adipose tissue and cartage.

a "pump 706 is used to evacuate air from an interior chamber 106 in the applicator via a tube 118." *Id.* at 2:24–27. The specification states that "control unit 703 includes a power source 705," and that the "power source 705 is connected to a pair of RF electrodes 201 and 202 in the applicator 701 via wires 115 and 116 that pass through the tube 118 in the cable 702." *Id.* at 2:28–32. The specification further states that a "skin massager 230 may also be associated with the applicator for massaging the skin during the RF treatment." *Id.* at 2:62–64. The specification adds that "[t]he control unit 701 optionally contains a processor 708 for monitoring and controlling various functions of the device." *Id.* at 2:39–42.

Plaintiff brings suit alleging infringement of claims 1, 8, 13, 14, 19, 26, 27, 30, 31, 33, 36, 37, and 39 of the '054 Patent. Claim 8 of the '054 Patent is representative of the asserted claims and recites the following elements (disputed terms in italics):

> 8. A system for treating skin, comprising:
> (a) a skin deformer deforming the skin so that a *region of skin* protrudes out from surrounding skin;
> (b) one or more RF electrodes configured to apply RF energy to the skin;
> (c) a *massager* for *massaging the skin*.

## II.    APPLICABLE LAW

### A.  Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *See id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims

themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id*. The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at

1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

### B. Construction Indefiniteness

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112(b). Whether a claim meets this definiteness requirement is a

matter of law. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1344 (Fed. Cir. 2007). A party challenging the definiteness of a claim must show it is invalid by clear and convincing evidence. *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1368 (Fed. Cir. 2014). The ultimate issue is whether someone working in the relevant technical field could understand the bounds of a claim. *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010). Specifically, "[a] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

### III.     CONSTRUCTION OF AGREED TERMS

The parties have agreed to the construction of the following terms:

| Claim Term/Phrase | Agreed Construction |
|---|---|
| "radio frequency" or "RF" | "electromagnetic wave frequencies in the range from about 10 kilohertz to about 300 gigahertz" |
| "radio frequency energy" or "RF energy" | "the amount of energy generated by electromagnetic waves with frequencies from about 10 kilohertz to about 300 gigahertz" |

Dkt. No. 84-1 at 1. In view of the parties' agreements on the proper construction of each of the identified terms, the Court hereby **ADOPTS AND APPROVES** the parties' agreed constructions.

### IV.     CONSTRUCTION OF DISPUTED TERMS

The parties' dispute focuses on the meaning and scope of five terms/phrases in the '054 Patent.

### 1.   "deforming the skin," "massaging the skin," and "massage the skin"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "massaging the skin" | "a technique for exerting forces on the skin of either pressure, movement, or pinching phenomena" | This term, when read in light of the specification and the prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." |

### a) The Parties' Positions

The parties dispute whether the phrase "massaging the skin" is indefinite. Plaintiff contends that it is not indefinite and should be construed to mean "a technique for exerting forces on the skin of either pressure, movement, or pinching phenomena." Plaintiff argues that prior to this case, Defendants had no problem understanding the word "massage" or concluding that it was a "previously well-known technique." (Dkt. No. 78 at 9.) Plaintiff further contends that USPTO examiners used the term "massage," or a variation thereof, approximately 90 times during the patenting and reexamination processes, and provided examples of their understanding of massage. (Dkt. No. 78 at 9.)

Plaintiff further argues that the '054 Patent states that massaging the skin has long been known to improve the blood circulation in the subcutaneous adipose tissue, which is located only about 5 mm beneath the skin surface. (Dkt. No. 78 at 8–9) (citing Dkt. No. 78, Ex. 2 at 1:12–14, Ex. 1 at 39:4–20). Plaintiff contends that the '054 Patent explains that "the combined treatment [of negative pressure and massaging] increases the blood circulation in the subcutaneous adipose tissue and breaks connections between adipose cells in the tissue." (Dkt. No. 78 at 10) (quoting Dkt. No. 78, Ex. 2 at 1:17–20). Plaintiff further contends that the '054 Patent additionally cites to the U.S. Patent No. 5,961,475 ("the '475 Patent") as an example of "a massaging device in which negative pressure is applied to the skin together with massaging." (Dkt. No. 78 at 10) (quoting Dkt. No. 78, Ex. 2 at 1:15–17). Plaintiff argues that due to this citation, the '475 Patent is considered part of the intrinsic record that must be considered during claim construction. (Dkt.

No. 78 at 10.)  Plaintiff also argues that Defendants' expert summarily dismissed the background section as providing "no context," and said that he did not consider the patent's background as "guidance on what the claims mean in the context of the patent." (Dkt. No. 78 at 10) (quoting Dkt. No. 78, Ex. 1 at 151:22–152:8, 153:7–10).

Plaintiff contends that the background section provides context for the '054 Patent and does not abstractly describe "massaging."  Plaintiff argues that the '054 Patent describes "massaging the skin" for the specified purpose of improving blood circulation in the adipose tissue located directly beneath the skin. (Dkt. No. 78 at 10) (citing Dkt. No. 78, Ex. 2 at 1:10–20).  Plaintiff further argues that the specification only uses "massaging" in the context of treating the skin and the immediately underlying tissue. (Dkt. No. 78 at 11) (citing Dkt. No. 78, Ex. 2 at 1:29–31, 2:62–64).  According to Plaintiff, nothing in the specification of the '054 Patent suggests that the term "massaging the skin" should deviate from its plain and ordinary meaning. (Dkt. No. 78 at 11.)  Plaintiff also argues that the plain and ordinary meaning of "massaging the skin" is "a technique for exerting forces on the skin of either pressure, movement, or pinching phenomena." (Dkt. No. 78 at 11.)

Plaintiff further argues that Defendants' expert agreed that all techniques for "massaging the skin" involve exerting pressure or forces on the skin. (Dkt. No. 78 at 11.)  Plaintiff argues that if Defendants' expert would have considered the guidance provided in the opening sentences of the patent itself, he could have confined his analysis to skin massage for increasing blood flow in the first few millimeters from the skin surface. (Dkt. No. 78 at 11.)  Plaintiff further contends that there are at least five additional pieces of intrinsic evidence that expressly discuss massage and inform its meaning. (Dkt. No. 78 at 12) (citing Dkt. No. 78, Ex. 3 at 1:9, 1:10–12, 1:13–14; 1:45–46; Ex. 9 at 9, 6 & 7; Ex. 6 at 7).  According to Plaintiff, all of the above intrinsic evidence

informs the meaning of the massage terms and are part of the intrinsic record that must be considered during claim construction. (Dkt. No. 78 at 13.)

Plaintiff further argues that Defendants' expert violated well-established rules of claim construction by not considering statements made by the examiner and the background section of the patent. (Dkt. No. 78 at 13.) According to Plaintiff, even if there are many ways to massage the skin, it does not mean the common term "massaging the skin" cannot be reasonably understood by a person of ordinary skill in the art ("POSITA"). (Dkt. No. 78 at 13.) Plaintiff further argues that the only dictionary definition provided by either party defines "massage" as the soft tissues being "manipulated in different ways (kneaded, rubbed, stroked, tapped, etc.) and at different depths and rates for various purposes: to improve circulation, metabolism and muscle tone, to break down adhesions, to expel gases, and to either relax or stimulate the patient." (Dkt. No. 78 at 14) (quoting Dkt. No. 78, Ex. 12 at 239845). Plaintiff contends that this definition comports with the plain and ordinary meaning of "massaging the skin," and corroborates its construction. (Dkt. No. 78 at 14.)

Plaintiff further argues that although Defendants' expert checked dictionary definitions for the other terms in dispute, he did not consult a dictionary for "massage" or "massager." (Dkt. No. 78 at 14.) Plaintiff contends that until this suit was filed, Defendants' documents contained admissions that its accused product performs a massage. (Dkt. No. 78 at 14.) Plaintiff also contends that Defendants previously told the public that its "Reaction™ system combines CORE™ technology with vacuum therapy to initiate three different processes: deep tissue heating, mechanical stretch and mechanical massage," and that "[t]he treatment is simple and comfortable, and may resemble the sensation of a deep tissue massage. The practitioner uses a treatment applicator that is placed on the skin in slow, concentrated motions." (Dkt. No. 78 at

14–15) (citing Dkt. No. 81, Ex. 13 at Syneron-00001130R, Ex. 14 at Syneron-00001132R).

Defendants respond that the phrase "massaging the skin" has a whole raft of meanings that vary greatly depending on the context in which it is used. (Dkt. No. 81 at 4–5.) Defendants argue that to a physician in the medical aesthetic industry, the term "massaging" means different actions in different treatment contexts, and that the '054 Patent provides no meaningful context. (Dkt. No. 81 at 5.) Defendants argue that there is nothing in the patent limiting the claimed method and system to any particular treatment of skin. (Dkt. No. 81 at 5.) Defendants further argue that the patent and the file histories do not provide objective criteria to differentiate between massaging and non-massaging actions, other than those specifically disclaimed by the patentee. (Dkt. No. 81 at 5.) According to Defendants, the claim term "massaging the skin" renders the claims indefinite because it does not inform a POSITA with a reasonable degree of certainty where the line is between actions that constitute the claimed "massaging" step and those which do not. (Dkt. No. 81 at 5.)

Defendants also argue that deforming the skin is an independent step which must be performed first, followed by a separate, subsequent step of "massaging the skin." (Dkt. No. 81 at 6.) Defendants contend that deforming the skin by the application of forces to pinch the skin or applying negative pressure to the skin is not "massaging" in the context of the claims. (Dkt. No. 81 at 6.) Defendants argue that if Plaintiff's construction was adopted, a POSITA who performed the first two steps repeatedly would not know if their deforming of the skin fell within the "massing the skin" step. (Dkt. No. 81 at 6.)

Defendants further argue that the specification describes deforming the skin via negative pressure separate and apart from any reference to massaging. (Dkt. No. 81 at 6) (citing Dkt. No. 81, Ex. C at 1:36–40, 40–42, 46–48, 56–62, Fig. 2). Defendants also argue that Application

Figure 3 was described as showing "deformation of the skin with the applicator of Fig. 2," and that the specification stated "[a] skin massager (not shown) may also be associated with the applicator for massaging the skin during the RF treatment." (Dkt. No. 81 at 6) (citing Dkt. No. 81, Ex. A at 652, 653, 658–659). According to Defendants, this means that Figures 2 and 3 show only deformation of the skin and not massaging. (Dkt. No. 81 at 7.)

Defendants also argue that the applicants explained in the background section that massaging does not include applying negative pressure to the skin. (Dkt. No. 81 at 7.) Defendants argue that the specification states that the '475 Patent discloses "a massaging device in which negative pressure is applied to the skin together with massaging." (Dkt. No. 81 at 7) (quoting Dkt. No. 81, Ex. C at 1:14–17). Defendants argue that if exerting a force in the form of a negative pressure, i.e., a vacuum, to the skin was considered to be massaging by the applicants they would have said the '475 Patent discloses "a massaging device." (Dkt. No. 81 at 7.)

Defendants argue that Plaintiff relies exclusively on the background section to support its claim that the intrinsic evidence supports its construction of massaging the skin as being "a technique for exerting forces on the skin of either pressure, movement, or pinching phenomena." (Dkt. No. 81 at 7.) Defendants argue that exerting a force in the form of a negative pressure on the skin was expressly distinguished from massaging. (Dkt. No. 81 at 7–8.) Defendants further argue that the applicants' discussion of U.S. Pat. No. 6,273,884 ("Altshuler") also confirms that they did not consider massaging to be either the application of vacuum or the creation of folds in the skin as a hand piece moves over the skin. (Dkt. No. 81 at 8.)

Defendants further contend that the two other places that massaging is referred to in the specification do not provide any guidance about what "massaging the skin" means. (Dkt. No. 81 at 8) (citing '054 Patent at 1:29–31, 2:62–64). Defendants also argue that during prosecution,

the applicants amended independent claim 1 to add the massaging step. (Dkt. No. 81 at 9.) According to Defendants, if the massaging step was the same as the deforming step, then the addition of the massaging step to claim 1 would not have overcome the rejection. (Dkt. No. 81 at 9.)

Defendants further contends that during reexamination, Plaintiff argued that the application of a mechanical force, including a negative pressure, was not the claimed massaging step or the massager. (Dkt. No. 81 at 9–10.) Defendants contend that the examiner initially disagreed with Plaintiff, but ultimately found that the claimed step of massaging the skin was different than what was disclosed in the references. (Dkt. No. 81 at 11.) According to Defendants, this confirms that whatever "massaging the skin" is, it cannot be satisfied by: (1) a mobile device with a handle that can be moved along the skin surface while applying force to massage the skin; or (2) a device that can be applied to the skin surface released, moved and re-applied to achieve a massaging affect, since the prior art methods were found not to satisfy the claims. (Dkt. No. 81 at 11.)

Defendants further argue that Plaintiff's original construction contains no boundaries on the amount of pressure, movement, or pinching necessary to infringe. (Dkt. No. 81 at 11–12.) Defendants contend that under Plaintiff's new construction, a person or ordinary skill would have no idea whether their unintentional application of pressure, movement, of pinching on the skin falls under the scope of the claims. (Dkt. No. 81 at 13.) Defendants also argue that Plaintiff's expert confirmed that a POSITA would not know whether he was practicing the claimed massaging step based only on the patent specification and the prosecution history, and that he would have to seek outside sources to determine whether the pressure he applied constituted "massaging" as claimed. (Dkt. No. 81 at 14.)

Defendants further contend that Plaintiff now argues that the assertion of pressure must result in increased blood flow. (Dkt. No. 81 at 14.) Defendants argue that Plaintiff's construction does not say anything about increasing blood flow. (Dkt. No. 81 at 14.) Defendants further argue that since Plaintiff's construction admittedly encompasses superficial contact with the skin that does not increase blood flow, it does not assist a POSITA in knowing whether their skin treatment has crossed the line and become "massaging" under the claims. (Dkt. No. 81 at 15.) Defendants also argue that if Plaintiff's construction requires that exertion of forces must increase blood flow, there is no way to distinguish between the skin deforming step (vacuum) and the massaging step, since the '054 Patent states that both are said to increase blood circulation in the skin. (Dkt. No. 81 at 15.)

Defendants also argue that even after amending the drawing to add the two circles representing a massager for massaging the skin, the specification does not describe any techniques for massaging the skin. (Dkt. No. 81 at 15.) Defendants argue that Plaintiff improperly took the inverse of the statement in the '475 Patent by asserting that "exerting forces on the skin of either pressure, movement, or pinching phenomena" by definition equals massaging. (Dkt. No. 81 at 16.) Defendants contend that the fact that all massage techniques may involve some degree or type of pressure, movement, or pinching does not mean that applying any of those forces alone is by definition massaging. (Dkt. No. 81 at 16.) Defendants further contend that the '054 Patent "generally" cites to the '475 Patent and does not incorporate it by reference. (Dkt. No. 81 at 16.) Defendants argue that a single sentence from the '475 Patent generally stating what forces may be involved in certain massage techniques certainly does not constitute a definition of "massaging the skin" as claimed in the '054 Patent. (Dkt. No. 81 at 16.)

Defendants further argue that Plaintiff's construction improperly tries to reclaim claim

scope that was surrendered during prosecution. (Dkt. No. 81 at 16.) Defendants argue that the '269 publication falls within Plaintiff's construction as it explicitly involves exerting forces of pressure and movement on the skin. (Dkt. No. 81 at 17.) Defendants also argue that Plaintiff's construction improperly conflates the separate steps of "deforming the skin" and "massaging the skin" in claim 1. (Dkt. No. 81 at 17.) Defendant contends that the specification and the prosecution history establish that the step of deforming the skin and massaging the skin are two separate steps. (Dkt. No. 81 at 17.)

Finally, Defendants argue that the statement made about the '054 Patent by a person from Defendant's company support the position that whatever massaging is, it is not vacuum treatment. (Dkt. No. 81 at 18.) Defendants contend that the statement acknowledges that the use of the combination of massage/vacuum was well known. (Dkt. No. 81 at 18.) Defendants also argue that Plaintiff violates the well-known rule that patent claims are construed independently of the accused products or commercial embodiments. (Dkt. No. 81 at 18.) Defendants further contend that Plaintiff mischaracterizes much of their expert's testimony. (Dkt. No. 81 at 19.) Defendants argue that neither the Velashape applicator, without the massage rollers, nor the Reaction product perform the claimed massaging step because they are identical to Figure 2 and application Figure 3, which they contends do not have a massager for massaging the skin. (Dkt. No. 81 at 19–20.)

Plaintiff replies that there is there is no reason a POSITA would confuse the massage types referred to in Dr. Sayed's declaration with the patent's reference to "massaging the skin." (Dkt. No. 83 at 1.) Plaintiff contends that Defendants rely on contradictory extrinsic evidence in the form of Dr. Sayed's declaration. (Dkt. No. 83 at 2.) Plaintiff further argues that its construction of "massaging the skin" requires "a technique for exerting forces" (plural) on the

skin. (Dkt. No. 83 at 3.)  According to Plaintiff, a single press, or a single deformation of the skin (with or without a vacuum), is a single force, not a massage technique. (Dkt. No. 83 at 3.)

Plaintiff further contends that Defendants take positions diametrically opposed to well-established claim construction law. (Dkt. No. 83 at 3.)  Plaintiff contends that Defendants violate claim construction law by substituting its expert's extrinsic opinion for statements in the intrinsic record. (Dkt. No. 83 at 3.)  Plaintiff further argues that Defendants' statement that a claim term subject to multiple interpretations is invalid as indefinite is contrary to law. (Dkt. No. 83 at 3–4.) Plaintiff also contends that Defendants do not cite to any instance in the intrinsic evidence where term was expressly defined or claim scope was disavowed. (Dkt. No. 83 at 4.)  Plaintiff also argues that "unilateral statements by an examiner do not give rise to a clear disavowal of claim scope by an applicant." (Dkt. No. 83 at 4) (quoting *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005)).  Plaintiff further contends that Defendants improperly attempt to add a negative "non-vacuum induced" limitation to the definition of massaging. (Dkt. No. 83 at 4–5.)

Plaintiff also argues that Defendants improperly attempt to read a vacuum embodiment from the specification into claim 1. (Dkt. No. 83 at 5.)  Plaintiff also contends that Defendants' position violates the doctrine of claim differentiation. (Dkt. No. 83 at 5.)  Plaintiff argues that dependent claim 3 recites "wherein deforming the skin comprises applying a negative pressure [i.e., a vacuum] to the skin," and that claim 1 does require a vacuum. (Dkt. No. 83 at 5.)  Plaintiff contends that the claims do not impose any limitation on the massage step in claim 1 that would exclude massaging the skin by pulsed or intermittent negative pressure applications. (Dkt. No. 83 at 5–6.)  Plaintiff also argues that Defendants improperly read a specific order of steps into the method claims. (Dkt. No. 83 at 6.)  Plaintiff concludes that nowhere in its brief do Defendants

address the "clear and convincing" standard that is required to prove indefiniteness. (Dkt. No. 83 at 6.)

For the following reasons, the Court finds that the phrase **"deforming the skin"** should be construed to mean **"applying a negative pressure to the skin,"** and that the phrase **"massaging the skin"** should be construed to mean **"exerting a force on the skin to increase the blood flow in the subcutaneous adipose tissue, wherein the force is separate from a force caused by moving along the skin surface or by moving and reapplying the negative pressure."**

### b) Analysis

As an initial matter, the Court finds that the intrinsic evidence indicates that the phrases "deforming the skin" and "massaging the skin" must be considered together. The phrase "deforming the skin" appears in claims 1, 3, and 8 of the '054 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same meaning in each claim. The phrase "massaging the skin" appears in claims 1 and 8 of the '054 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same meaning in each claim. For the reasons discussed below, the Court finds that the claims, read in light of the specification delineating the patent, and the prosecution history, inform, with reasonable certainty, those skilled in the art about the scope of the invention.

The claim language indicates that "deforming the skin" and "massaging the skin" are separate and distinct limitations of independent claims 1 and 8. For example, claim 1 recites "(a) deforming the skin so that the region of skin protrudes from surrounding skin; . . . (c) massaging the skin." Likewise, claim 8 recites "(a) a skin deformer for deforming the skin so that a region of skin protrudes out from surrounding skin; . . . (c) a massager for massaging the skin."

Contrary to Plaintiff's contention, the scope of the claims is not so broad that they include massaging the skin by pulsed or intermittent negative pressure applications. This would have the effect of combing these two distinct step/elements into one element, which would read either the phrase "massaging the skin" or "deforming the skin" out of the claims. This would be contrary to the intrinsic evidence.

The specification describes deforming the skin via negative pressure separate from massaging. For example, in describing the prior art, the specification states that "U.S. Pat. No. 5,961,475 discloses a massaging device in which negative pressure is applied to the skin *together with massaging*." '054 Patent at 1:15–17 (emphasis added). Similarly, the specification states that "[a]ctivating the pump 706 partially evacuates the interior 106 of the applicator, so as to create a negative pressure in the interior of the applicator 701," thereby bringing the subcutaneous adipose tissue closer to the RF electrodes. '054 Patent at 2:53–62. The specification adds that "[a] skin massager 230 may also be associated with the applicator for massaging the skin *during the RF treatment*." '054 Patent at 2:62–64 (emphasis added).

The remaining portions of the specification also only describe deforming the skin, and do not indicate that this deformation would include the recited "massaging the skin." For example, the specification states that "[i]n accordance with the invention, a region of skin to be treated is deformed so that the region protrudes out from surrounding skin, and radio-frequency (RF) energy is applied to the protrusion by applying one or more RF electrodes to the skin surface." '054 Patent at 1:40–44. Accordingly, the Court finds that a person of ordinary skill in the art would understand that "deforming the skin" and "massaging the skin" are separate and distinct limitations of the independent claims.

With this understanding, the task before the Court is to determine the scope of the phrase

"deforming the skin" and the phrase "massaging the skin." To that end, the Court finds that the prosecution history informs, with reasonable certainty, those skilled in the art about the scope of the invention as it relates to these phrases. The following provides a brief summary of the prosecution history related to the filing of the initial patent application, as well as the prosecution history related to the ex parte reexamination of the '054 Patent.

### i. Prosecution of the Initial Patent Application

The initial patent application for the '054 Patent was filed on March 26, 2002. The application contained twenty total claims, including two independent claims (claims 1 and 9). The phrase "deforming the skin" was recited in the independent claims, while the phrase "massaging the skin" was only recited in dependent claims 2 and 12. Claims 1, 2, 9, and 12, as recited in the application follow:



Dkt. No. 81, Ex. A at 240653–55. Three figures were also included in the application. Figures 2 and 3 depicted the same applicator device, only differing in their representation of the skin 108.



Figure 2.

Figure 3.

(Dkt. No. 81, Ex. A at 240658–59). As shown above, Figure 3 in the application did not include "skin massager 230," as illustrated in the issued patent. '054 Patent at 2:62–64, Fig. 3. Instead, in describing Figure 3, the applicants stated that "[a] skin massager (not shown) may also be associated with the applicator for massaging the skin during the RF treatment." (Dkt. No. 81, Ex. A at 240653).

On April 28, 2003, the USPTO issued an Office Action in which the examiner rejected and/or objected to all of the application claims in view of U.S. Patent No. 6,047,215 to McClure ("McClure"), U.S. Patent No. 6,086,583 to Ouchi ("Ouchi"), U.S. Patent No. 6,336,926 to Goble ("Goble"), and U.S. Patent No. 6,470,216 to Knowlton ("Knowlton"). (Dkt. No. 81, Ex. A at 240691–95 (4/28/2003 OA)). In particular, the examiner found that Knowlton "discloses an apparatus and method for smoothing contour irregularities of skin surface by applying a skin deformer vacuum or suction drawn on applicator surface 14) and then applying RF energy via an energy delivery device (18, col. 4, lines 25–47 and col. 11, lines 1–27)." (Dkt. No. 81, Ex. A at 240694 (4/28/2003 OA)).

In the Office Action, the examiner further stated that "claims 2 and 12 [recited above] are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims."

(Dkt. No. 81, Ex. A at 240695 (4/28/2003 OA)). However, the examiner objected to the drawings stating that "[t]he drawings must show every feature of the invention specified in the claims therefore, *the massager*, and the impedance meter in claims 12 and 14 must be shown or the feature(s) canceled from the claim(s)." (Dkt. No. 81, Ex. A at 240691 (4/28/2003 OA)) (emphasis added).

In response to the April 28, 2003 Office Action, the applicants canceled claims 2 and 12, and amended claims 1 and 9 to add the phrase "massaging the skin" as follows:



(Dkt. No. 81, Ex. A at 240701–02 (Response to 4/28/2003 OA)). The applicants also proposed adding massager 230 to Figure 3, represented by two circles inside of the electrodes and the applicator housing, as illustrated below:



Figure 3

(Dkt. No. 81, Ex. A at 240700 (Response to 4/28/2003 OA)). The applicants further proposed amending the specification "by deleting '(not shown)' and inserting --230--," as follows:

electrodes 201 and 202. RF energy is then applied to the skin by the electrodes. A skin massager (not shown) 230 may also be associated with the applicator for massaging the skin during the RF treatment.

(Dkt. No. 81, Ex. A at 240706, 714 (Response to 4/28/2003 OA)). On July 17, 2003, the USPTO issued a Notice of Allowability, accepting the amendments and allowing the claims. (Dkt. No. 81, Ex. A at 240722 (Notice of Allowability)).

### ii. Ex Parte Reexamination of the '054 Patent

On September 14, 2012, Plaintiff filed a request for ex parte reexamination of the '054 Patent. (Dkt. No. 81, Ex. C at 240314–48 (Reexamination Request)). The request was based on five prior art references. The prior art references included: WO '286 Publication, WO '269 Publication, U.S. Patent No. 6,926,683 to Kochman et al. ("the '683 Patent"), U.S. Patent No. 6,518,538 to Bernabei ("the '538 Patent"), and U.S. Patent No. 6,652,518 to Wellman et al. ("the '518 Patent" or "Wellman" ). (Dkt. No. 81, Ex. C at 240316–17 (Reexamination Request)).

Regarding the WO '286 publication, Plaintiff stated that "[w]hen referring to Figures 1 and 2, reproduced below, the WO '286 publication describes the template 12 as including a soft tissue mechanical force application surface 14 and a receiving opening 16 to receive a body structure." (Dkt. No. 81, Ex. C at 240325 (Reexamination Request)). Plaintiff further stated that the "[t]he WO '286 publication discloses that '[t]he mechanical force application surface can be a positive pressure application surface that applies compression to the soft tissue or a negative pressure application surface that creates an extension of the soft tissue structure.'" (Dkt. No. 81, Ex. C at 240326 (Reexamination Request)).



**Figs. 1 and 2 of the WO '286 publication**

(Dkt. No. 81, Ex. C at 240326–27 (Reexamination Request)). Plaintiff further noted that "[d]uring the prosecution of the EP counterpart application, the EPO Examiner rejected all of the claims of the application based on the WO '286 and '269 publications, including original claim 12 (later renumbered as claim 4) reciting 'massager for massaging the skin,' which is substantially identical to claim 8 of the '054 patent." (Dkt. No. 81, Ex. C at 240329 (Reexamination Request)). Plaintiff also noted that after oral proceedings on November 27, 2007, and an appeal to the Technical Board of Appeal at the EPO, the EPO declined to issue the corresponding claims. (Dkt. No. 81, Ex. C at 240331–32 (Reexamination Request)). Plaintiff concluded that "[w]hile the USPTO issued claims 2 and 12, the EPO declined to issue the corresponding claims from the EP counterpart application for reasons detailed above. Requester

calls attention to the EPO's analysis relative to these claims, as the EPO's rationale for continuing to reject these claims arguably raises substantial new questions of patentability with respect to all of claims 1–18 of the '054 patent." (Dkt. No. 81, Ex. C at 240334 (Reexamination Request)).

Plaintiff then argued that "[t]he WO '286 and '269 publications both describe Figure 17 [included below] as illustrating a template with an adherent or 'suction **mechanical force** delivery surface that permits **manual manipulation** of skin and soft tissue structures.'" (Dkt. No. 81, Ex. C at 240336 (Reexamination Request)) (emphasis in original).



**Fig. 17 of the WO '269 publication**

Plaintiff further argued that "[t]he WO '286 and '269 publications also fail to disclose or suggest massaging the skin and a massager for massaging the skin elements of the claims in the '054 patent." (Dkt. No. 81, Ex. C at 240338 (Reexamination Request)). Specifically, Plaintiff stated the following:

> Although the EPO Examiner stated that the mechanical force applied to the skin in the device of the WO '286 and '269 publications corresponds to the "massager" element (e.g., Exhibit 4 at International Preliminary Examination Report mailed June 18, 2004, para. 2.1.), nowhere in those references is there any explicit teaching or suggestion of a "massager" element or "massaging" step recited in claims and 18 [sic] of the '054 patent.

(Dkt. No. 81, Ex. C at 240338 (Reexamination Request)).

In addition to the WO '286 and '269 publications, Plaintiff's reexamination request also cited U.S. Patent No. 6,652,518 to Wellman ("the '518 Patent" or "Wellman") that "was neither cited nor applied during prosecution of the '054 patent." (Dkt. No. 81, Ex. C at 240344 (Reexamination Request)).  Plaintiff stated that "[t]he '518 patent discloses 'a method and tool for creating effective ablation extending entirely through a layer of tissue.'" (Dkt. No. 81, Ex. C at 240345 (Reexamination Request) (quoting '518 Patent at 1:9–11).  Specifically, Plaintiff stated that the '518 Patent "explains that 'FIG. 1C is an enlarged cross-sectional view of the ablation head 40 in a plane across the channel 44, illustratively showing a layer of tissue 50 held therein by the suction apertures 48 when suction is applied.'" (Dkt. No. 81, Ex. C at 240346 (Reexamination Request)).



**FIG. 1C**

Fig. 1C of the '518 Patent

Plaintiff further stated that claims 1 and 8 of the '054 Patent remain patentable over the '518 patent, in part because "[t]he '518 patent does not disclose massage or structure configured to massage." (Dkt. No. 81, Ex. C at 240347 (Reexamination Request)).

On November 26, 2012, the reexamination request was granted and the examiner stated that "[i]n the original prosecution of the '054 patent the examiner indicated that the reasons that the claims of the –'054 patent were allowed was because the prior art failed to disclose or fairly suggest the massaging of the skin and a massager for massaging the skin in combination with the system and method for treating skin." (Dkt. No. 81, Ex. C at 240565–66 (Order Granting

Reexam Request)).  The Examiner found that each of the five references cited by Plaintiff raised

substantial new questions of patentability as to the claims of the '054 Patent. (Dkt. No. 81, Ex. C

at 240566 (Order Granting Reexam Request)).  Specifically, as to the WO '286 publication, the

Examiner stated:

> The –'286 publication discloses a system and method for treating skin which
> includes using an application of mechanical force which compresses or extends
> skin surface tissue structure and uses Rf energy to change the skin contour. *The
> device can be mobile and it has a handle indicating it can be moved along the
> skin surface while applying force and as such would be seen as massaging the
> skin surface.*

(Dkt. No. 81, Ex. C at 240567 (Order Granting Reexam Request)) (emphasis added). Similarly,

in discussing the '518 Patent (Wellman), the examiner stated:

> Wellman discloses a system and method for treating a tissue surface whereby
> suction is applied to deform the tissue surface and draw it into an opening in the
> device to protrude from surrounding tissue . . . . . *The device can be applied to
> the skin surface released, moved and re-applied and is thus capable of achieving
> a "massaging affect."*

(Dkt. No. 81, Ex. C at 240570 (Order Granting Reexam Request)) (emphasis added).

On January 4, 2013, Plaintiff submitted its Patent Owner's Statement Under 37 C.F.R.

§ 1.530 and Submission of Additional Claims. (Dkt. No. 81, Ex. C at 240575).  With this filing,

Plaintiff submitted new claims 19 through 37, including new independent claims 19 and 30.

(Dkt. No. 81, Ex. C at 240576–80).  New independent claim 19 included the limitation "wherein

the device includes a curved surface configured to massage the skin," but did not include the

limitation of a separate massager from the original claims. (Dkt. No. 81, Ex. C at 00240576).

Similarly, new independent claim 30 recited "wherein the housing supports a curved surface

configured to massage skin," and also did not include the separate massager from the original

claims. (Dkt. No. 81, Ex. C at 240578).

On March 29, 2013, the Examiner issued an office action confirming the patentability of

claims 1–18 and rejecting new claims 19–37. (Dkt. No. 81, Ex. C at 240588–89). Specifically, the Examiner rejected new claim 19 under 35 U.S.C. § 102(b) as being anticipated by Wellman, stating that Wellman disclosed a "device includ[ing] a curved surface . . . configured to (or capable of) massag[ing] the skin. (Dkt. No. 81, Ex. C at 240593).

The examiner also rejected new claims 19–37 under 35 U.S.C. § 305 as improperly enlarging the scope of the claims of the '054 Patent. (Dkt. No. 81, Ex. C at 240594). The examiner stated that "[n]ew claim 19 also fails to include the original limitation of a massager for massaging the skin . . . new claim 19 only calls for a curved surface configured to massage the skin, which is broader in scope than claiming a massager." (Dkt. No. 81, Ex. C at 240595). The examiner made a similar statement in rejecting new claim 30, stating "[n]ew claim 30 also fails to include the original limitation of a massager for massaging the skin . . . new claim 30 only calls for the housing supports a curved surface configured to massage the skin, which is broader in scope than claiming a massager." (Dkt. No. 81, Ex. C at 240595).

The Examiner also rejected claims 19–37 under 35 U.S.C. § 112(a) as failing to comply with the written description requirement, explaining that the claims contain subject matter not described in the specification as to reasonably convey to one skilled in the relevant art that the inventors had possession of the claimed invention. Specifically, the examiner stated the following:

> With respect to claim 19, the specification fails to provide support for the device including a curved surface configured to massage the skin. The specification only states that a massager 230 may be associated with the applicator for massaging the skin, meaning it could be a completely separate and different structure than the applicator device. The device made up of the other claimed elements was not disclosed as having a massager.
> With respect to claim 30, the specification fails to provide support for the housing supports a curved surface configured to massage the skin. The specification only states that a massager 230 may be associated with the

applicator for massaging the skin, meaning it could be a completely separate and different structure than the applicator device and not supported thereby.

(Dkt. No. 81, Ex. C at 240596–97). As to the '054 Patent's original claims 1–18, the Examiner also provided a Statement of Reasons for Patentability and/or Confirmation. (Dkt. No. 81, Ex. C at 240598–99). Specifically, the examiner stated the following:

> The cited prior art fails to teach or suggest the method of claim 1 including a method of treating skin including the three steps of deforming skin so a region protrudes from surrounding skin, applying Rf energy to the skin and massaging the skin. The '269 and '286 publications fail to teach deforming the skin so a region protrudes from neighboring skin and massaging the skin. Wellman does not teach treating skin, but rather ablates tissue such as heart tissue; additionally, no massaging of the skin takes place in the disclosed method.

(Dkt. No. 81, Ex. C at 240598). The examiner also found that each of the cited prior art references failed to include the system of claim 8. Specifically, the examiner stated the following:

> The cited prior art also fails to include the system of claim 8 including a system for treating skin including the three elements of a skin deformer for deforming skin so a region protrudes from surrounding skin, one or more Rf electrodes configured to apply Rf energy to the skin, and a massager for massaging the skin. The -269 and -286 publications fail to teach a massager for massaging the skin. The housing on these publications forms part of the claimed skin deformer and therefore even though the housing could potentially be placed against skin and moved back and forth and/or up and down relative to a section of skin and perform a "massaging" action, the claim requires both a skin deformer and a massager, not one element with just two functions. Wellman [the '518 patent] and Bernabei [the '538 patent] fail to teach or suggest any massager either.

(Dkt. No. 81, Ex. C at 240598–99).

On May 29, 2013, Plaintiff submitted a response to the March 29, 2013 Office Action in which Plaintiff included amendments proposed by the examiner. (Dkt. No. 81, Ex. C at 240604–23). Regarding the proposed amendments, Plaintiff stated "the Patent Owner's response adopts the Examiner's recommendations concerning the newly added claims (i.e., claims 19–37) in order to place this application in condition for issuance of a Reexamination Certificate." (Dkt.

No. 81, Ex. C at 240604). Among its changes, Plaintiff amended new claim 19 to include a separate "massager" so that the amended claim read "wherein the system includes a massager having a curved surface associated with the housing and configured to massage the skin." (Dkt. No. 81, Ex. C at 240616–17). Plaintiff also made similar amendments to independent claim 30, by adding a separate "massager" so that the amended claim read "wherein a massager having a curved surface associated with the housing is configured to massage the skin." (Dkt. No. 81, Ex. C at 240619).

Plaintiff further represented that it amended the claims as suggested by the Examiner during a personal interview held on May 28, 2013, in order to place the claims in condition for issuance of a reexamination certificate. (Dkt. No. 81, Ex. C at 240610–11). Plaintiff further represented that during this interview, all of the Examiner's prior objections/rejections were discussed and that Plaintiff and the examiner agreed that Plaintiff's proposed amendments were sufficient to overcome those rejections. (Dkt. No. 81, Ex. C at 240610–14).

On June 4, 2013, the USPTO filed a summary of the interview that took place between Plaintiff's representatives and the examiners. (Dkt. No. 81, Ex. C at 240624–26). The summary stated that during the interview, "PTO personnel stated that the term 'massage' is broader than 'massager." (Dkt. No. 81, Ex. C at 240626). The summary also indicated that the initial proposal for new claim 19 of a "device includ[ing] a curved surface configured to massage the skin" was improper, because "as disclosed the massager is not part of the same 'device' as the housing, electrodes and vacuum aperture, but rather is 'associated with' it." (Dkt. No. 81, Ex. C at 240626). The summary continued, "[t]herefore it was suggested that the preamble be changed to 'system' from 'device' in order to allow for the massager to be claimed and that the use of massager overcome Wellman, which does teach a curved massage surface (curved surface

capable of performing a massaging action) but fails to teach or make obvious an actual 'massager.'" (Dkt. No. 81, Ex. C at 240626).

Regarding claim 30, the summary states that "PTO personnel again suggested that the massage surface be changed to 'massager' in order to keep the new claims from being broader in scope than the patented claims." (Dkt. No. 81, Ex. C at 240626). The summary concluded by stating that PTO personnel agreed that these amendments to the claims would overcome the prior art rejections, the written description rejections, and the rejections based on the new claims being impermissibly broader than the original claims. (Dkt. No. 81, Ex. C at 240626).

On August 12, 2013, the PTO issued a Notice of Intent to Issue Ex Parte Reexamination Certificate indicating that the claims were patentable in their amended form. (Dkt. No. 81, Ex. C at 240630). The Notice included the Examiner's Statement of Reasons for Patentability and/or Confirmation. (Dkt. No. 81, Ex. C at 240630). The Statement of Reasons for Patentability was consistent with several of the opinions in the March 29, 2013 Office Action. In particular, the Examiner stated that the cited prior art fails to teach "massaging the skin," as required in claim 1 of the '054 Patent. (Dkt. No. 81, Ex. C at 240635). The Examiner also stated that the prior art similarly fails to teach "a massager for massaging the skin." (Dkt. No. 81, Ex. C at 240635–36). Specifically, the Examiner stated that the WO '269 and '286 publications fail to teach such a massager:

> The housing on these publications forms part of the claimed skin deformer and therefore even though the housing could potentially be placed against skin and moved back and forth and/or up and down relative to a section of skin and perform a "massaging" action, the claim requires both a skin deformer and a massager, not one element with just two functions.

(Dkt. No. 81, Ex. C at 240635–36). The Notice ended by notifying Plaintiff that it must promptly submit any comments it considered necessary regarding the Examiner's rejections and

confirmations of the '054 Patent Claims. (Dkt. No. 81, Ex. C at 240636). Plaintiff did not file any responsive comments.

**iii.    Analysis of the Prosecution History of the '054 Patent as It Relates to the Disputed Terms**

Consistent with the other intrinsic evidence, the Court finds that the prosecution history indicates that the "deforming the skin" and "massaging the skin" are separate and distinct limitations of independent claims 1 and 8. As discussed above, to overcome the rejections in the first Office Action, the applicants amended the independent claims to include the phrase "massaging the skin." In conjunction with the claim amendments, the applicants amended Figure 3 to add the recited "massager 230," and also amended the specification to indicate that the separate and distinct massager was now shown in Figure 3. This was in response to the examiner's objection to the drawings, which stated that the figures did not illustrate the recited "massager." It is important to note that this objection had nothing to do with the "deforming the skin" limitation, which was illustrated and discussed in the specification prior to these amendments. More importantly, the amendments to the claims, drawings, and specification were made to overcome the cited prior art, which the examiner stated disclosed everything except the recited "massager." Accordingly, the Court agrees that Plaintiff's construction would improperly recapture claim scope surrendered during prosecution.

Moreover, during the reexamination the examiner initially stated that the WO '286 publication disclosed "massaging the skin," because "the device . . . can be moved along the skin surface while applying force and as such would be seen as massaging the skin surface." (Dkt. No. 81, Ex. C at 240567 (Order Granting Reexam Request)). Similarly, the examiner stated that the '518 Patent (Wellman) disclosed "massaging the skin," because "[t]he device can be applied to the skin surface released, moved and re-applied and is thus capable of achieving a

'massaging affect.'" (Dkt. No. 81, Ex. C at 240570 (Order Granting Reexam Request)).

In a subsequent Office Action, the examiner determined that the recited "massaging the skin" element required more than moving a device along the skin surface, or moving and reapplying negative pressure. Instead, the examiner found that the claims require both a skin deformer and a massager. Specifically, the examiner stated that "[t]he housing on [the '269 and '286] publications forms part of the claimed skin deformer and therefore even though the housing could potentially be placed against skin and moved back and forth and/or up and down relative to a section of skin and perform a 'massaging' action, the claim requires both a skin deformer and a massager, not one element with just two functions." (Dkt. No. 81, Ex. C at 240598–99). This is consistent with the claim, specification, and drawing amendments required by the examiner during the prosecution of the initial application. In other words, the recited "massaging the skin" is not any "technique for exerting forces on the skin of either pressure, movement, or pinching phenomena," as Plaintiff contends. Instead, "massaging the skin" is exerting a force by a separate and distinct massager. As the Examiner indicated, it is a force that is separate from a force caused by moving along the skin surface or by moving and reapplying the negative pressure.

Plaintiff's proposal would eliminate any distinction between the recited "deforming the skin" element and the recited "massaging the skin" element, and thereby fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention. Under Plaintiff's construction, any force exerted on the skin would satisfy both the "deforming the skin" and the "massaging the skin" limitations. Indeed, Plaintiff contends that the claims do not impose any limitation on the massage step in claim 1 that would exclude massaging the skin by pulsed or intermittent negative pressure applications. (Dkt. No. 83 at 6.) In other words, Plaintiff's

construction makes the illustrated "massager 230" optional. However, the claims are not interpreted in a vacuum, and Plaintiff's construction directly contradicts the amendments required by the examiners and made by the applicants during prosecution.

Indeed, as discussed above, the examiner explicitly stated that "even though the housing could potentially be placed against skin and moved back and forth and/or up and down relative to a section of skin and perform a 'massaging' action, *the claim requires both a skin deformer and a massager*, *not one element with just two functions*." (Dkt. No. 81, Ex. C at 240598–99 (3/19/2013 OA), *see also* 240634–35) (emphasis added). Plaintiff's construction directly contradicts this by replacing two elements with one element performing two functions.

Moreover, construing the phrase "massaging the skin" as Plaintiff proposes would read on the prior art Knowlton. Specifically, it would expand the scope of the claim to allow both the recited "deforming the skin" and the recited "massaging the skin," to be satisfied simply by applying a negative pressure. Consistent with the examiner's rejection, the Court finds that a person of ordinary skill in the art would understand that Knowlton illustrates and discloses an energy delivery device 18 (which can deliver RF energy), and a mechanical force application surface 14, which "can apply pressure, suction, adhesion and the like in order to create an extension or compression of the soft tissue collagen containing structure and/or the skin surface." (Dkt. No. 81, Ex. A at 240694 (4/28/2003 OA)).



FIG. 1

Knowlton, 4:25–47, Figure 1.  Accordingly, the Court rejects Plaintiff's construction because it would capture claim scope surrendered during prosecution, and read on the prior art argued around during prosecution.

The Court further finds that a person of ordinary skill in the art would understand the phrase "deforming the skin" to mean "applying a negative pressure to the skin."  The specification states that "U.S. Pat. No. 5,961,475 discloses a massaging device in which negative pressure is applied to the skin together with massaging." '054 Patent at 1:15–18.  Likewise, the prior art cited during prosecution and reexamination included "deforming the skin" by applying a negative pressure to the skin.  It is also undisputed that "deforming the skin" by applying a negative pressure was a common and well-known technique. *See, e.g.*, '054 Patent at 1:15–18.  The applicants did not argue that the claims do not cover such deformation or exclude such deformation, but instead further limited the claims by requiring a "massaging the skin" element.

Likewise, the specification repeatedly states that the skin is deformed by applying a negative pressure. *See, e.g.*, '054 Patent at 2:12–14 ("FIG. 2 shows an applicator for applying negative pressure and RF energy to skin in accordance with the invention); 2:19–22 ("[A] device for applying negative pressure and RP energy to skin in accordance with the invention is

shown."); 1:44–46 ("In a preferred embodiment, the region of skin is deformed by applying a negative pressure to the region of the skin.");  2:53–55 ("Activating the pump 706 partially evacuates the interior 106 of the applicator, so as to create a negative pressure in the interior of the applicator 701.").  Moreover, a person of ordinary skill in the art would understand that "deforming the skin" means "applying a negative pressure to the skin," based on the prosecution history.  As discussed in detail above, the prosecution history provides the necessary context for determining the proper scope of the "deforming the skin" element and the "massaging the skin" element.

To the extent that Plaintiff contends that the Court's construction limits the claims to a preferred embodiment, the Court finds that it is warranted in this instance based on the intrinsic evidence.  Likewise, the Court is not persuaded by Plaintiff's contention that the doctrine of claim differentiation counsels against construing "deforming the skin" as "applying a negative pressure."  *Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1375) (Fed. Cir. 2008) ("[T]he doctrine of claim differentiation is not a hard and fast rule and will be overcome by a contrary construction dictated by the written description or prosecution history." (internal quotations omitted)).  Here, the examiner found that the prior art disclosed every element of original independent claim 1 and dependent claim 3, including deforming the skin by applying a negative pressure.  Thus, it was with the understanding that "deforming the skin" meant applying a negative pressure to the skin, that the additional "massaging the skin" element overcame the prior art.  Otherwise, these two element would be one in the same and the additional "massaging the skin" element would not have provided any distinction over the prior art.  Accordingly, the Court finds that a person of ordinary skill in the art would understand that "deforming the skin" means "applying a negative pressure to the skin."

Finally, contrary to Plaintiff's contention, statements by the examiner can inform how a person of ordinary skill in the art would interpret the claims. *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005) ("Although unilateral statements by an examiner do not give rise to a clear disavowal of claim scope by an applicant, it does not necessarily follow that such statements are not pertinent to construing claim terms. Statements about a claim term made by an examiner during prosecution of an application may be evidence of how one of skill in the art understood the term at the time the application was filed."). Moreover, the Court disagrees with Plaintiff's characterization that the statements made by the examiners in the '054 Patent prosecution were "unilateral."

Instead, both the applicants and Plaintiff followed the examiner's suggestion of narrowing the scope of the claims by either amending the claims, specification, or drawings to obtain allowance. *Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202, 1207–08 (Fed. Cir. 1992) (holding that a patentee acquiescing in an examiner's rejection of a broad claim by filing narrower claims cannot later regain the broader scope previously abandoned). As stated in *Lemelson*, "[o]ther players in the marketplace are entitled to rely on the record made in the Patent Office in determining the meaning and scope of the patent." *Id.* at 1208. Indeed, Plaintiff faults Defendants' expert for not considering statements made by the examiner in reaching his conclusion that the disputed phrase is indefinite. (Dkt. No. 78 at 13.) Accordingly, the Court finds that "deforming the skin" should be construed to mean "applying a negative pressure to the skin."

Regarding the phrase "massaging the skin," the Court finds that the intrinsic evidence informs, with reasonable certainty, those skilled in the art about the scope of the invention. Specifically, the specification describes "massaging the skin" for the specified purpose of

improving blood circulation in the adipose tissue located directly beneath the skin. '054 Patent at 1:10–20. In fact, the specification only uses "massaging" in the context of treating the skin and the immediately underlying tissue. *See, e.g.*, '054 Patent at 1:29–31 ("Improved skin elasticity allows more aggressive massaging of the skin and oxygen dissociation from hemoglobin causes fat destruction."); 2:62–64 ("A skin massager 230 may also be associated with the applicator for massaging the skin during the RF treatment.").

Similarly, the extrinsic evidence submitted by the parties defines "massage" as the soft tissues being "manipulated in different ways (kneaded, rubbed, stroked, tapped, etc) and at different depths and rates for various purposes: to improve circulation, metabolism and muscle tone, to break down adhesions, to expel gases, and to either relax or stimulate the patient . . . ." (Dkt. No. 78, Ex. 12 at Syneron-00239845) This is consistent with the intrinsic evidence and indicates that "massaging the skin" means at least exerting a force on the skin to increase the blood flow. However, for the reasons discussed above, the prosecution history requires the Court to find that the force exerted is not just any force, but must be separate from a force caused by moving the system along the skin surface or by moving and reapplying a negative pressure.

For example, it could be a force applied by "skin massager 230" that "is associated with the applicator for massaging the skin during the RF treatment." '054 Patent at 2:63–64. Accordingly, the Court finds that claims 1 and 8, read in light of the specification and the prosecution history, inform, with reasonable certainty, those skilled in the art that the scope of the claim. Specifically, claims 1 and 8 require a method or system that: (1) applies a negative pressure to the skin; and (2) exerts a force on the skin to increase blood flow in the subcutaneous adipose tissue, wherein the force is separate from a force caused by moving the system along the skin surface or by moving and reapplying the negative pressure. For these reasons, the Court

finds that Defendants have failed to show by clear and convincing evidence that the phrase "massaging the skin" is indefinite.

Finally, the phrase "massage the skin" appears in claims 19 and 31 of the '054 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same meaning in each claim. The Court further finds that the phrase "massage the skin" is very similar to and was intended to have the same general meaning as "massaging the skin." This is evident by comparing the claim language. For example, claim 8 recites a "massager for massaging the skin," and claims 19 and 31 recite a "massager . . . configured to massage the skin." In each instance, the claimed "massager" performs the same role. Accordingly, the Court finds that "massage the skin" should be construed to mean "exert a force on the skin to increase the blood flow in the subcutaneous adipose tissue, wherein the force is separate from a force caused by moving along the skin surface or by moving and reapplying the negative pressure."

### c) Court's Construction

In light of the intrinsic and extrinsic evidence, the Court construes the phrase **"deforming the skin"** to mean **"applying a negative pressure to the skin,"** and the phrase **"massaging the skin"** to mean **"exerting a force on the skin to increase the blood flow in the subcutaneous adipose tissue, wherein the force is separate from a force caused by moving along the skin surface or by moving and reapplying the negative pressure."** The Court also construes **"massage the skin"** to mean **"exert a force on the skin to increase the blood flow in the subcutaneous adipose tissue, wherein the force is separate from a force caused by moving along the skin surface or by moving and reapplying the negative pressure."**

### 2. "massager for massaging the skin" and "massager . . . configured to massage the skin"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "massager for massaging the skin"<br><br>"massager . . . configured to massage the skin" | "structure configured for massaging the skin" | This term, when read in light of the specification and the prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." |

### a)  The Parties' Positions

The parties dispute whether the phrase "massager for massaging the skin" and the phrase "massager . . . configured to massage the skin" are indefinite, or if they should be construed to mean "structure configured for massaging the skin," as Plaintiff proposes.  Plaintiff contends that Defendants incorrectly contend that there is only one sentence in the specification that provides guidance as to the meaning of the term "massager" (Dkt. No. 78 at 15.)  Plaintiff argues that the claims themselves define the "massager," stating that it is "for massaging the skin" or, similarly, "configured to massage the skin." (Dkt. No. 78 at 16.)  Plaintiff further contends that Defendants ignore that the patent provides the context of "skin massage." (Dkt. No. 78 at 16.)  According to Plaintiff, the fact that there are many ways to massage skin does not mean the common terms "massager for massaging the skin" and "massager . . . configured to massage the skin" cannot be reasonably understood by a POSITA. (Dkt. No. 78 at 16.)

Plaintiff further argues that the examiners understood the difference between something "capable of" massaging, and the claimed "massager," which must be configured or designed for massaging the skin. (Dkt. No. 78 at 16–17.)  Plaintiff further argues that both parties' experts recognize that whether a device constitutes a "massager" as claimed depends on whether the structure was designed or intended to massage the skin. (Dkt. No. 78 at 17) (citing Dkt. No. 78, Ex. 11 at 63:13–14; Ex. 1 at 112:13–21).   According to Plaintiff, the terms "massager for massaging the skin" and "massager . . . configured to massage the skin" should be construed to mean "structure configured for massaging the skin." (Dkt. No. 78 at 17.)

Defendants respond that the only sentence in the issued '054 Patent that mentions the claimed "massager" reads: "[a] skin massager 230 may also be associated with the applicator for massaging the skin during RF treatment." (Dkt. No. 81 at 20) (quoting Dkt. No. 81, Ex. C at 2:62–64).  Defendants contend that the '054 Patent provides no further description, examples, or explanation about the claimed "massager" nor does it give any guidance to a POSITA as to how the massager is used for massaging the skin. (Dkt. No. 81 at 20.)  Defendants argue that application Figure 3 was amended to include two circles labeled 230, but that the '054 Patent does not describe these circles other than to state that they depict a "massager." (Dkt. No. 81 at 20.)  Defendants argue that the only explanation is that the massagers perform massaging during the RF treatment. (Dkt. No. 81 at 20–21) (citing Dkt. No. 81, Ex. C at 2:62–64).

Defendants further argue that the original application and original prosecution history offer no explanation or examples of what the claimed massager is or does, but that they do confirm what the massager is not. (Dkt. No. 81 at 21.)  According to Defendants, the two electrodes (201 and 202) with curved surfaces and an applicator housing 105 are not the massager because they were illustrated in Application Figure 3 before the figure was amended. (Dkt. No. 81 at 21) (citing Dkt. No. 81, Ex. A at 240653, 240659).  Defendants argue that to overcome the Examiner's objection that the drawings did not show the claimed massager (application claim 12), applicants added two circles inside the applicator housing of Fig. 3 labeled 230 and amended the specification to read "a skin massager (230) may also be associated . . . ." (Dkt. No. 81 at 21) (citing Dkt. No. 81, Ex. A at 240690–91, 240705–09).

Defendants further argue that in allowing claim 8, the Examiners explained that the structure for deforming the skin cannot also be the claimed massager. (Dkt. No. 81 at 22) (citing Dkt. No. 81, Ex. C at 240635–36).  Defendants also contend that the examiners rejected all of

Plaintiff's proposed new claims 19–37, which included the new limitation of a "curved surface configured to massage the skin." (Dkt. No. 81 at 22) (citing Dkt. No. 81, Ex. C at 240589–97). According to Defendants, the examiners found that the claimed "massager" could not simply be a "curved surface configured to massage." (Dkt. No. 81 at 22.) Defendants contend that claim 19 was amended to read "wherein the system includes a massager having a curved surface associated with the housing and configured to massage the skin," and claim 30 was amended to read "wherein a massager having a curved surface associated with the housing is configured to massage the skin." (Dkt. No. 81 at 22–23) (Dkt. No. 81, Ex. C at 240616–19). Defendants argue that Plaintiff's amendments to obtain allowance confirm that whatever the claimed "massager" is, it cannot be the curved electrodes in application Figure 3. (Dkt. No. 81 at 23.)

Defendants further argue that while a POSITA would know that these specifically rejected components are not the claimed "massager," he or she would have no objective criteria to determine what an infringing massager actually would be. (Dkt. No. 81 at 23.) Defendants argue that given the ambiguities inherent in Figure 3, which shows no interaction between the massagers and the skin, one skilled in the art is only told that a massager is a device for massaging the skin. (Dkt. No. 81 at 23.) According to Defendants, this does not satisfy a patent claim's requirement to inform one skilled in the art with reasonable certainty which structures fall within the scope of the claims and which do not. (Dkt. No. 81 at 23.)

Defendants also argue Plaintiff's construction for "massager" is identical to the claim scope surrendered during prosecution and reexamination in order to gain allowance. (Dkt. No. 81 at 23.) Defendants argue that the examiners rejected, and Plaintiff through amendment agreed, that any claim scope for the term "massager" that encompasses a "curved surface configured to massage the skin" is impermissibly broader than the "massager" in the original claims, is

unsupported by the specification, and is disclosed in the prior art. (Dkt. No. 81 at 25.) Defendants contend that Plaintiff's current construction encompasses any structure, including the disclaimed curved surface, as long as it is "configured" for massaging the skin. (Dkt. No. 81 at 25.)

Defendants also argue that Plaintiff's construction improperly introduces an element of intent into the scope of the claims. According to Defendants, under Plaintiff's construction, whether a given structure falls within the scope of the claims is subject to a subjective determination of intent, rather than a purely objective analysis. (Dkt. No. 81 at 25.) Finally, Defendants argue that Plaintiff's construction introduces redundancy into the claims by using the term "configured for massaging the skin." (Dkt. No. 81 at 25.)

Plaintiff replies that claim terms do not have to appear in the specification to be definite. (Dkt. No. 83 at 7.) Plaintiff further argues that Defendants did not address the fact that the claims themselves explicitly state that the "massager" is "for massaging the skin" or "configured to massage the skin." (Dkt. No. 83 at 7.) Plaintiff argues that Defendants directly contradict the explicit claim language, inexplicably stating that "the claimed 'massager' . . . cannot be a device configured to massage the skin." (Dkt. No. 83 at 7.) Plaintiff further argues that it construes the entire phrase "Massager for massaging the skin" (claim 8) / "Massager . . . configured to massage the skin" (claims 19, 30, 31, 39), so there is no redundancy. (Dkt. No. 83 at 7–8.) Finally, Plaintiff argues that there was no disclaimer of a curved surface. (Dkt. No. 83 at 8.) Plaintiff contends that it simply amended the newly added reexamination claims, not original claim 8, to recite that the massager includes a curved surface. (Dkt. No. 83 at 8.)

For the following reasons, the Court finds that the term **"massager"** should be construed to mean **"a structure capable of massaging the skin."**

### b)  Analysis

As an initial matter, the parties dispute the phrase "massager for massaging the skin" and the phrase "massager . . . configured to massage the skin."  The Court has construed the phrases "massaging the skin" and "massage the skin."  Thus, the only term left to construe is "massager."  The term "massager" appears in claims 8, 19, 30, 31, and 39 of the '054 Patent.  The Court finds that the term is used consistently in the claims and is intended to have the same meaning in each claim.  Moreover, the claim language indicates that the recited "massager" is "a structure capable of massaging the skin."  For example, claim 8 recites that the massager is "for massaging the skin."  Similarly, independent claims 19 and 31, recite that the massage is "configured to massage the skin."

Thus, when considered with the Court's previous construction for the phrase "massaging the skin," the recited massager (i.e., a structure capable of massaging the skin) is used for "exerting a force on the skin to increase the blood flow in the subcutaneous adipose tissue, wherein the force is separate from a force caused by moving along the skin surface or by moving and reapplying the negative pressure."  As discussed above, the examiner stated that "*the claim requires both a skin deformer and a massager*, *not one element with just two functions*." (Dkt. No. 81, Ex. C at 240598–99 (3/19/2013 OA), *see also* 240634–35) (emphasis added).  Accordingly, the Court finds that the recited "massager" is the element that is capable of "massaging the skin," and not the element used for "deforming the skin," as these phrases have been construed by the Court.

Regarding Defendants contention that the term is indefinite, the specification describes that a "massager" would be used for the specified purpose of improving blood circulation in the adipose tissue located directly beneath the skin. '054 Patent at 1:10–20.  In fact, the specification

only uses "massaging" in the context of treating the skin and the immediately underlying tissue. *See, e.g.*, '054 Patent at 1:29–31 ("Improved skin elasticity allows more aggressive massaging of the skin and oxygen dissociation from hemoglobin causes fat destruction."). Furthermore, the claims, figures, and specification were amended to specifically illustrate the recited "massager." The specification states that "a skin massager 230 may also be associated with the applicator for massaging the skin during the RF treatment." '054 Patent at 2:62–64.

Similarly, the extrinsic evidence submitted by the parties defines "massage" as the soft tissues being "manipulated in different ways (kneaded, rubbed, stroked, tapped, etc) and at different depths and rates for various purposes: to improve circulation, metabolism and muscle tone, to break down adhesions, to expel gases, and to either relax or stimulate the patient . . . ." (Dkt. No. 78, Ex. 12 at 239845). This is consistent with the intrinsic evidence and indicates that a massager would be used to exert a force on the skin to increase the blood flow. For example, this could be a force caused by "skin massager 230" illustrated in Figure 3, which is a structure capable of massaging the skin. Accordingly, for the reasons discussed above, the Court finds that the claims, read in light of the specification delineating the patent, and the prosecution history, inform, with reasonable certainty, those skilled in the art about the scope of the invention.

That said, the Court agrees with Defendants that the prosecution history indicates that the recited "massager" is not the two electrodes (201 and 202) and applicator housing 105. As discussed above, Figure 3 filed with the application did not include the recited "massager," and the specification indicated that the recited "massager" was not shown. Instead, Figure 3 only illustrated the two electrodes (201 and 202) and application housing 105. It was only after Figure 3 was amended that the massager 230 was illustrated.

Moreover, the prosecution history indicates that a curved surface in the housing is by itself is not the recited "massager."  As discussed above, independent claims 19 and 30 submitted during reexamination originally included a limitation that generally recited that "wherein the device/housing includes/supports a curved surface configured to massage the skin." (Dkt. No. 81, Ex. C at 00240576).  In the March 29, 2013 Office Action, the examiner rejected new claims 19 and 30, under 35 U.S.C. § 305 as improperly enlarging the scope of the claims of the '054 Patent. (Dkt. No. 81, Ex. C at 240594).  The examiner stated that "[n]ew claim 19 also fails to include the original limitation of a massager for massaging the skin . . . new claim 19 only calls for a curved surface configured to massage the skin, which is broader in scope than claiming a massager." (Dkt. No. 81, Ex. C at 240595).

The examiner made a similar statement in rejecting new claim 30, stating "[n]ew claim 30 also fails to include the original limitation of a massager for massaging the skin . . . new claim 30 only calls for the housing supports a curved surface configured to massage the skin, which is broader in scope than claiming a massager." (Dkt. No. 81, Ex. C at 240595).  The Examiner also rejected claims 19 and 30 under 35 U.S.C. § 112(a) as failing to comply with the written description requirement, explaining that the claims contain subject matter not described in the specification as to reasonably convey to one skilled in the relevant art that the inventors had possession of the claimed invention.  (Dkt. No. 81, Ex. C at 240596–97).

In its response to the March 29, 2013 Office Action, Plaintiff amended new claim 19 to recite a separate "massager" so that the amended claim read "wherein the system includes a massager having a curved surface associated with the housing and configured to massage the skin." (Dkt. No. 81, Ex. C at 240616–17).  Plaintiff also made similar amendments to independent claim 30, by reciting a separate "massager" so that the amended claim read

"wherein a massager having a curved surface associated with the housing is configured to massage the skin." (Dkt. No. 81, Ex. C at 240619) (Dkt. No. 81, Ex. C at 240604–23). Plaintiff further stated that "the Patent Owner's response adopts the Examiner's recommendations concerning the newly added claims (i.e., claims 19–37) in order to place this application in condition for issuance of a Reexamination Certificate." (Dkt. No. 81, Ex. C at 240604).

Based on the prosecution history, the Court agrees with Defendants that the intrinsic evidence indicates that the recited "massager" is not the two electrodes (201 and 202) or applicator housing 105. However, the Court disagrees that the recited "massager" cannot have curved surfaces. Indeed, claim 19 and 31 explicitly recite "a massager having a curved surface." Moreover, the Court disagrees with Defendants that the recited massager "cannot be a device configured to massage the skin." (Dkt. No. 81 at 23.) That would be contrary to the intrinsic evidence, which indicates that the recited "massager" is "a structure capable of massaging the skin."

### c) Court's Construction

In light of the intrinsic and extrinsic evidence, the Court construes the term **"massager"** to mean **"a structure capable of massaging the skin."**

### 3. "associated with the housing"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "associated with the housing" | joined, connected, or combined with the housing | connected with but distinct from the housing |

### a) The Parties' Positions

The parties dispute whether the phrase "associated with the housing" requires the massager to be distinct from the housing, as Defendants contend. Plaintiff contends that Defendants' construction derives from a vague statement made by the patent examiners that the

"disclosed 'massager' is not part of the same 'device' as the housing." (Dkt. No. 78 at 20) (citing Dkt. No. 72 at 11 ¶ 22). Plaintiff contends that the examiners never used the words "distinct from," and even if the examiners had, the law is clear that an examiner's unilateral statements do not alter the meaning of the claims. (Dkt. No. 78 at 20) (citing *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005)). Plaintiff further argues that even if the law were otherwise, the '054 Patent's disclosure does not say one way or another whether the skin massager 230 is molded or formed together with the housing, or is later connected. (Dkt. No. 78 at 21.)

Plaintiff further contends that the examiners also remarked that "[t]he specification only states that a massager 230 may be associated with the applicator for massaging the skin, meaning it could be a completely separate and different structure than the applicator device." (Dkt. No. 78 at 21) (citing Dkt. No. 78, Ex. 18 at 8–9). Plaintiff argues that by noting that the massager "could be" a separate structure, the examiners implicitly acknowledged that it might not be. (Dkt. No. 78 at 21.) Plaintiff further argues that the specification uses the term "associated with" in only the most general sense. (Dkt. No. 78 at 21) (citing Dkt. No. 78, Ex. 2 at 2:62–64). Plaintiff further contends that it did not expressly adopt a narrower definition anywhere in the prosecution history. (Dkt. No. 78 at 21.)

Plaintiff further argues that Defendants improperly rely on a dictionary definition dated twelve years after the filing date of the '054 Patent. (Dkt. No. 78 at 21.) Plaintiff contends that the definition it provides is in accord with the plain and ordinary meaning, defining "associate" as "3: to join or connect together; COMBINE" and "[t]o join or connect in a relationship." (Dkt. No. 78 at 21–22) (quoting Dkt. No. 78, Ex. 20 at Syneron-239868; Ex. 21 at Syneron-239850). According to Plaintiff, the plain and ordinary meaning of "associated with the housing" is

"joined, connected, or combined with the housing." (Dkt. No. 78 at 22.)

Defendants respond that while the '054 Patent and its file histories never explain what the claimed massager is, they definitively establish that it is not the same component as the applicator housing, but instead is a separate and unique component which is "associated with" the housing. (Dkt. No. 81 at 26–27.) Defendants contend that it is common sense that if one component is "associated with" another component, there must be at least two components. (Dkt. No. 81 at 27.) Defendants further argue that the claim term "associated with the housing" only appears in reexamination claims 19, 30, 31, and 39, to refer to the physical relationship of the claimed "massager" to the skin treatment device. (Dkt. No. 81 at 27.) Defendants contend that the closest language in the specification to this term states that "a skin massager 230 may also be associated with the applicator for massaging the skin during the RF treatment." (Dkt. No. 81 at 27) (citing '054 Patent at 2:62–64).

Defendants argue that during prosecution, application Figure 3 depicted the claimed applicator including: "a bell-shaped housing 105"; a skin deformer (vacuum); two separate RF electrodes (201 and 202) embedded in the housing, and a protruding region of skin being deformed by the vacuum. (Dkt. No. 81 at 27) (citing Dkt. No. 81, Ex. A at 240652–59). Defendants argue that the original specification explained that the claimed massager was not depicted in application Figure 3. (Dkt. No. 81 at 27) (citing Dkt. No. 81, Ex. A at 240653). Defendants further contend that two circles representing the claimed massager were added to Figure 3. (Dkt. No. 81 at 27.) According to Defendants, since the massager was not originally shown, by definition it cannot be part of the previously described components. Defendants contend that this is precisely what Figure 3 depicts, a separate massager that is associated with, but distinct from the rest of the components. (Dkt. No. 81 at 27.)

Defendants further argue that the reexamination history confirms that "associated with the housing" means something other than the housing itself. (Dkt. No. 81 at 27.) Defendants argue that Plaintiff attempts to include claims seeking to cover a curved surface of the housing as the massager failed. (Dkt. No. 81 at 27.) Defendants contend that the examiner rejected this claim scope, stating that Wellman disclosed a curved surface configured to massage the skin, and that the new claims impermissibly enlarged the scope of the original claims because "a curved surface configured to massage the skin . . . is broader in scope than claiming a massager." (Dkt. No. 81 at 27–28) (citing Dkt. No. 81, Ex. C at 640592–97).

Defendants further argue that the examiners also rejected the claims under § 112, and held Plaintiff to its original admission that nothing in application Figure 3 constituted a massager, and that the claims were allowed only after Plaintiff added the separate "massager 230." (Dkt. No. 81 at 28) (citing Dkt. No. 81, Ex. C at 640596–97). According to Defendants, the PTO explicitly rejected Plaintiff's attempt to expand the scope of the "massager" to encompass a curved surface that was part of the device, because there was no support in the specification or original claims for such a broadly construed element. (Dkt. No. 81 at 28.)

Defendants further argue that the PTO confirmed this in an interview summary between the examiners and Plaintiff, in which the examiners repeated: "[A]s disclosed the massager is not part of the same 'device' as the housing electrodes and vacuum aperture, but rather is 'associated with' it." (Dkt. No. 81 at 28) (Dkt. No. 81, Ex. C at 640626). Defendants contend that Plaintiff amended the claims as required by the Examiners. (Dkt. No. 81 at 28) (Dkt. No. 81, Ex. C at 640616–21). According to Defendants, rather than argue for a broader claim scope wherein the massager could be part of the same device as the housing, electrodes, or vacuum aperture, Plaintiff simply amended its claims to gain allowance and surrendered the broader claim scope.

(Dkt. No. 81 at 28.)

Regarding Plaintiff's construction, Defendants argue that "joined with" and "combined with" could be read to mean that the massager can be part of the housing. (Dkt. No. 81 at 29.) Defendants contend that the prosecution and reexamination histories confirm that the claimed massager is not part of the same device as the housing, electrodes, or vacuum aperture, but rather is "associated with" it, i.e., a distinct component. (Dkt. No. 81 at 29.)

Plaintiff replies that Defendants' construction disregards the plain and ordinary meaning of "associated with," which does not require complete separateness of components. (Dkt. No. 83 at 8.) Plaintiff contends that Defendants' own dictionary definition does not require separateness of components. (Dkt. No. 83 at 9) (citing Dkt. No. 83, Ex. 19). Plaintiff argues that nowhere did it act as its own lexicographer or expressly disavow claim scope regarding the term "associated with the housing." (Dkt. No. 83 at 9.)

For the following reasons, the Court finds that the phrase **"associated with the housing"** should be construed to mean **"joined or connected to, but distinct from the housing."**

### b) Analysis

The phrase "associated with the housing" appears in claims 19, 30, 31, and 39 of the '054 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same meaning in each claim. The Court further finds that the phrase "associated with the housing" refers to the physical relationship of the claimed "massager" to the skin treatment device. For example, claim 31 recites "wherein a massager having a curved surface associated with the housing is configured to massage the skin." The specification further recites "a skin massager 230 may also be associated with the applicator for massaging the skin during the RF treatment." '054 Patent at 2:62–64. The Court finds that neither the claims nor the specification

provide definitive guidance on whether "associated with the housing" means "distinct from the housing." Accordingly, the Court turns to the prosecution history.

Starting with Figure 3 in the initial application, the Court finds that it included the claimed applicator ("a bell-shaped housing 105"); a skin deformer (vacuum); two RF electrodes (201 and 202); and a protruding region of skin being deformed by the vacuum. (Dkt. No. 81, Ex. A at 640652–59). As discussed above, the Court finds that the original specification explained that the claimed massager was not depicted in application Figure 3. (Dkt. No. 81, Ex. A at 640653). It was only after the first Office Action that the two circles representing the claimed massager were added to Figure 3. The Court finds that this indicates to a person of ordinary skill in the art that Figure 3 depicts massagers that are associated with, but distinct from the rest of the components.

Turning to the reexamination history, the Court finds that the Plaintiff and the examiner explicitly discussed the connection between the massager and the housing. Specifically, the examiner reported in an interview summary that "as disclosed the massager is not part of the same 'device' as the housing electrodes and vacuum aperture, but rather is 'associated with' it." (Dkt. No. 81, Ex. C at 640626). The examiner further "suggested that the preamble be changed to 'system' from 'device' in order to allow the massager to be claimed." The prosecution history indicates that Plaintiff amended the claims as required by the examiner. (Dkt. No. 81, Ex. C at 640616–21). The prosecution history further indicates than Plaintiff did not argue for a broader claim scope when making the amendments.

Accordingly, the Court finds that a person of ordinary skill in the art would understand that "associated with" means "joined or connected to, but distinct from." In other words, the recited "massager" is not a curved surface in the housing, but instead is a curved surface of the

distinct massager. Indeed, the examiner rejected the claims under § 112 stating the following:

> With respect to claim 19, the specification fails to provide support for the device including a curved surface configured to massage the skin. The specification only states that a massager 230 may be associated with the applicator for massaging the skin, meaning it could be a completely separate and different structure than the applicator device. *The device made up of the other claimed elements was not disclosed as having a massager.*"

(Dkt. No. 81, Ex. C at 640596–97) (emphasis added). Plaintiff focus on the "could be" language is misplaced, because it ignores the concluding statement that "[t]he device made up of the other claimed elements was not disclosed as having a massager." In other words, the recited "massager" is joined or connected to, but distinct from the other claimed elements because they were not disclosed as having a massager.

### c) Court's Construction

In light of the intrinsic and extrinsic evidence, the Court construes the phrase **"associated with the housing"** to mean **"joined or connected to, but distinct from the housing."**

### 4. "processor"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "processor" | "central processing unit (CPU) or microprocessor for monitoring and controlling various functions" | a component for monitoring and controlling various functions |

### a) The Parties' Positions

The parties agree that the recited "processor" is "for monitoring and controlling various functions." The parties dispute whether the recited "processor" is a "central processing unit (CPU) or microprocessor," as Plaintiff proposes, or if it is a "component," as Defendants propose. Plaintiff contends that it is common parlance when referring to modern machine controls to use the term "processor" as substitute for a "microprocessor" or a "CPU." (Dkt. No.

78 at 18) (citing Dkt. No. 78, Ex. 16 at Syneron-239856). Plaintiff argues that in the context of the controls for its modern medical device, the term "processor" should be construed to mean "central processing unit (CPU) or microprocessor for monitoring and controlling various functions." (Dkt. No. 78 at 19.) Plaintiff contends that this is consistent with its well-understood meaning in the industry at the time of the invention. (Dkt. No. 78 at 19) (citing Dkt. No. 78, Ex. 10 at ¶ 30).

Plaintiff further argues that the sole reference Defendants rely upon to support a definition of "processor" is a noncontemporaneous dictionary definition. (Dkt. No. 78 at 19.) Plaintiff argues that the online definition from 2014 is too late and is outside the context of computing. (Dkt. No. 78 at 19) (citing Dkt. No. 78, Ex. 17). Plaintiff further contends that Defendants' dictionary citation defines "processor" as a "central processing unit," in the context of computing. (Dkt. No. 78 at 19) (citing Dkt. No. 78, Ex. 17).

Plaintiff also argues that information must be "processed" for example, when the processor "calculate[s] the skin temperature during treatment," and "reads information from a keypad to allow the operator to input selected values of parameters." (Dkt. No. 78 at 19) (quoting '054 Patent at 2:31–44). Plaintiff contends that not just any component can do this. (Dkt. No. 78 at 19.) Plaintiff concludes that the extrinsic dictionary definitions provided by both parties demonstrate that the plain and ordinary meaning of "processor" is a "central processing unit (CPU) or microprocessor for monitoring and controlling various functions." (Dkt. No. 78 at 19–20.)

Defendants respond that the '054 Patent describes that the "[t]he control unit 701 optionally contains a processor 708 for monitoring and controlling various functions of the device." (Dkt. No. 81 at 26) (citing '054 Patent at 2:39–41). Defendants contend that the

specification also provides several functions that may be monitored and/or controlled by the processor, including: "monitor[ing] the RF current voltage and calculat[ing] the skin temperature during the treatment." (Dkt. No. 81 at 26) (citing '054 Patent at 2:42–44). According to Defendants, the specification describes the processor as a component which enables monitoring and controlling functions of the device, including RF current voltage or skin temperature. (Dkt. No. 81 at 26.)

Defendants further argue that there is nothing in the '054 Patent that says the invention uses a computer or that these functions must be monitored and controlled by a microprocessor or central processing unit. (Dkt. No. 81 at 26.) Defendants further note that Plaintiff's dictionary definition comes from the "Microsoft Press Computer Dictionary." (Dkt. No. 81 at 26.) Defendants contend that nowhere in the '054 Patent do the words "computer," "computing," "central processing unit," or "microprocessor" appear. (Dkt. No. 81 at 26.) Defendants argue that this is because the invention is not directed toward or limited to computers. (Dkt. No. 81 at 26.) Defendants further argue that the '054 Patent calls for any component that can monitor and control various functions of the device. According to Defendants, their construction directly tracks the language of the '054 Patent itself, which is directed toward skin treatment, while Plaintiff's construction introduces undisclosed limitations for the word "processor" from the computing world. (Dkt. No. 81 at 26.)

For the following reasons, the Court finds that the term **"processor"** should be construed to mean **"a circuit for monitoring and controlling various functions."**

### b) Analysis

The term "processor" appears in claims 13, 14, 26, 27, 31, 33, 36, and 37 of the '054 Patent. The Court finds that the term is used consistently in the claims and is intended to have

the same meaning in each claim. The claim language further indicates that the processor is used for monitoring and controlling various functions. For example, claim 27 recites that "the processor is further configured to determine heat distribution in skin based upon one or more impedance measurements." The Court also finds that the specification indicates that the recited processor is optional in the preferred embodiment. '054 Patent at 2:39–41 ("The control unit 701 optionally contains a processor 708 for monitoring and controlling various functions of the device.") Accordingly, the specification indicates that the processor is not "central" to the operation of the system, but instead can be an optional circuit. Likewise, the intrinsic evidence indicates that the "processor" is not just any "component," as proposed by Defendants. "Component" is a very broad term that could include items that cannot monitor and control various functions.

However, the Court agrees with Defendants that the words "computer," "computing," "central processing unit," or "microprocessor" do not appear in the specification. It is true that the dictionary definitions submitted by the parties indicate that one embodiment may include a CPU, but this extrinsic evidence does not require the claims to be limited to CPUs or microprocessors. Instead, the Court finds that the intrinsic evidence indicates that a processor is a circuit that can monitor and control various functions of the system. Accordingly, the Court does not adopt either parties' construction because Plaintiff's proposed "CPU" language is too narrow, and Defendants' proposed "component" language is too broad.

### c) Court's Construction

In light of the intrinsic and extrinsic evidence, the Court construes the term **"processor"** to mean **"a circuit for monitoring and controlling various functions."**

### 5. "region(s) of the skin"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
| --- | --- | --- |
| "region(s) of the skin" | area(s) of the skin | the area(s) of skin to be deformed |

### a) The Parties' Positions

The parties dispute whether the phrase "region(s) of the skin" should be construed as "area(s) of the skin," as Plaintiff proposes, or as "the area(s) of skin to be deformed," as Defendants propose. Plaintiff contends that there is nothing about the term "regions of the skin" that requires interpretation. (Dkt. No. 78 at 17.) Plaintiff argues that a "region of skin" is an easily understood term, and nowhere in the prosecution history or the patent itself did the Plaintiff adopt a meaning different from the plain and ordinary one. (Dkt. No. 78 at 18.)

Plaintiff further argues that Defendants' construction would incorrectly limit a "region of skin" to a "region of skin to be deformed." (Dkt. No. 78 at 18.) Plaintiff contends that deformation has nothing to do with the definition of the term "region." (Dkt. No. 78 at 18.) Plaintiff further argues that adding the "to be deformed" improperly renders claim language superfluous. (Dkt. No. 78 at 18.) Plaintiff contends that claim 1 already reads, "deforming the skin so that the region of skin protrudes from surrounding skin." (Dkt. No. 78 at 18.)

Defendants respond that the '054 Patent consistently uses the term "region of skin" to refer to the area of skin that is subject to the three steps of the invention: (1) deforming a region of skin; (2) applying RF energy to the same region of skin; and (3) massaging the same region of skin. (Dkt. No. 81 at 29.) Defendants contend that the meaning for the term "region of the skin" as defined by the intrinsic evidence, is the area of skin intended to be deformed. (Dkt. No. 81 at 29.) Defendants argue that the specification repeatedly uses the term region of the skin to refer to the area of skin which is or will be subject to deformation by the skin deformer: "deforming a region of skin so that the region protrudes out from surrounding skin"; "the region of skin is deformed by applying a negative pressure to the region of skin." (Dkt. No. 81 at 29) (quoting

'054 Patent at 1:37–39; 45–46). Defendants argue that Figure 3 of the '054 Patent shows the region of skin being treated being deformed (vacuumed up) by the skin deformer. (Dkt. No. 81 at 29.) Defendants further contend that method claim 1 recites a method that requires three independent steps to be performed on "one or more regions of the skin": (1) deforming the skin; (2) applying RF to the skin; and (3) massaging the skin. (Dkt. No. 81 at 29.)

Defendants further contend that Plaintiff's argument that the construction creates redundancies is incorrect. (Dkt. No. 81 at 29.) Defendants argue that the '054 Patent teaches that the RF energy application and massaging is only to be performed on the area of skin to be deformed, and that the invention is based upon the findings that deforming a region of skin enhances the skin treatment. (Dkt. No. 81 at 30.) (citing '054 Patent at 1:36–39). According to Defendants, one of ordinary skill in the art would understand that it only makes sense to perform the RF and massaging steps on the area of skin to be deformed. (Dkt. No. 81 at 30.)

Plaintiff replies that Defendants' construction of "regions of skin" is unnecessarily redundant. (Dkt. No. 83 at 9.) Plaintiff contends that Defendants illustrate the redundancy, and that its explanation that it is not redundant makes little sense. (Dkt. No. 83 at 9.) Plaintiff further argues that Defendants have not explained how introducing "to be deformed" into a definition of "regions of the skin" comports with the basic claim construction principle that the plain and ordinary meaning of a term controls. (Dkt. No. 83 at 9.) Plaintiff argues that no dictionary includes "to be deformed" in a definition of a "region." (Dkt. No. 83 at 9.) Plaintiff further contends that Defendants have not even attempted to demonstrate that Plaintiff acted as its own lexicographer or disavowed broader claim scope.

For the following reasons, the Court finds that the phrase **"region(s) of the skin"** should be give its **plain and ordinary meaning.**

### b)  Analysis

The phrase "region(s) of the skin" appears in claims 1 and 8 of the '054 Patent.  The Court finds that the phrase is used consistently in the claims and is intended to have the same meaning in each claim.  The claim language further indicates that the area of the skin to be deformed is recited in the claims and does not require further clarification.  Specifically, claim 1 recites "deforming the skin so that the region of skin protrudes from surrounding skin."  Likewise claim 8 recites "a skin deformer for deforming the skin so that a region of skin protrudes out from surrounding skin."  This language is unambiguous and is not confusing.  Instead, it is Defendants' construction that is confusing and redundant of the claim language.  For example, claim 1 would read "deforming the skin so that *[the area of skin to be deformed]* protrudes from surrounding skin."  If the skin is deformed, it is no longer an area of skin "to be deformed."

Accordingly, Defendants have failed to convince the Court that it should redraft the claim to include Defendants' preferred language over the language selected by the applicants.  Moreover, Defendants do not contend that that the applicants acted as their own lexicographer or disavowed broader claim scope.  Accordingly, the Court finds that the phrase "region(s) of the skin" is unambiguous, is easily understandable by a jury, and requires no construction.

### c)  Court's Construction

In light of the intrinsic and extrinsic evidence, the phrase **"region(s) of the skin"** will be given its **plain and ordinary meaning.**

## V.    CONCLUSION

The Court adopts the above constructions.  The parties are ORDERED that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the

jury. Likewise, the parties are ORDERED to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

Within thirty (30) days of the issuance of this Memorandum Opinion and Order, the parties are hereby ORDERED, in good faith, to mediate this case with the mediator agreed upon by the parties. As a part of such mediation, each party shall appear by counsel and by at least one corporate officer possessing sufficient authority and control to unilaterally make binding decisions for the corporation adequate to address any good faith offer or counteroffer of settlement that might arise during such mediation. Failure to do so shall be deemed by the Court as a failure to mediate in good faith and may subject that party to such sanctions as the Court deems appropriate.

**So Ordered and Signed on this**

**Apr 9, 2015**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE